**Patricia J. HART, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 03–CF–256.

District of Columbia Court of Appeals.

Argued Oct. 14, 2004.

Decided Dec. 30, 2004.

Ivan M. Waldman, appointed by the court, for appellant.

Charles N. Floyd, Assistant United States Attorney, for appellee. Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, Alexander D. Shoaibi, and Bernard J. Delia, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and RUIZ, Associate Judges, and KING, Senior Judge.

RUIZ, Associate J.

Appellant was charged with aggravated assault while armed and possession of a prohibited dangerous weapon. *See* D.C.Code §§ 22–404.01(a), 4502(a) &

4514(b) (2001). At trial, she claimed she acted in self-defense against the complaining witness's unprovoked aggression. In the course of doing so, she sought to present evidence of the complainant's reputation for violence, in addition to evidence of her prior specific acts of violence. The court permitted evidence of specific acts only and excluded reputation evidence. The trial court also limited the defense's cross-examination of the complainant to three of her prior acts of violence. The appellant challenges these rulings by the trial court, as well as its failure to instruct the jury on the meaning of "serious bodily injury" as an element of aggravated assault. Appellant also challenges the evidentiary sufficiency of the jury's verdict finding her guilty of aggravated assault while armed, and further claims that the verdict should be set aside because the jury acted irrationally in finding her guilty of aggravated assault while armed, while acquitting her of possession of a prohibited dangerous weapon. We affirm.

## I.

On September 21, 2001, appellant, Patricia Hart, with her son, Ricky, visited the neighboring apartment of Mr. Williams and Ms. Jenkins.[1] The complainant, Wanda Arrington, was also visiting the apartment at that time. She testified that she had been smoking crack cocaine and drinking alcohol earlier in the day, and that she asked appellant for some crack cocaine to smoke. The complainant testified that appellant thereupon became "nasty" which prompted the complainant to want to leave the apartment because appellant was "blowing [her] high." As she attempted to exit the apartment, she turned around, and the appellant started to stab at her with a kitchen knife, lacerating her in both arms. The complainant knocked the appellant to the ground, from where the appellant stabbed her in the vagina. The complainant testified that she did not have a weapon and did not attack the appellant. A neighbor from across the street heard the fight, came over and broke it up. When he arrived, the appellant was standing with the knife in her hand, raised, while the complainant had retreated to near the bathroom.

Appellant testified to a different course of events. According to her, she did visit the Williams apartment with her son, and then stepped out briefly. When she returned, appellant became angry because she found the complainant smoking crack in front of appellant's six-year old son. According to appellant, the complainant physically attacked her in order to get money from her, choking her and punching her five or six times in the mouth. "To defend herself," the appellant retreated into the kitchen and grabbed a twelve-inch kitchen knife. She testified that the complainant followed her into the kitchen and started swinging her fists at her. In response, appellant swung the knife and cut the complainant in both arms. The complainant nevertheless managed to knock the appellant to the ground and started to trample her. Lying on her back, the appellant swung the blade and stabbed the complainant in the vagina. The appellant testified that Mr. Williams pulled the complainant off of her before the neighbor arrived.

The complainant was taken to the hospital as a result of the injuries and had to have forty-two stitches in her left arm, twenty in her right arm, and fourteen in her vagina.

---

1. Mr. Williams did not testify at trial because he died before trial began; his wife, Ms. Jenkins, suffered seizures that left her in a vegetative state. Mr. Williams and Ms. Jenkins had two small children of their own, who were present as well.

## II.

### 1. Evidence of the Complainant's Reputation for Violence in the Community

In support of appellant's claim of self-defense, counsel sought to introduce evidence showing that the appellant had knowledge of prior aggressive acts by the complainant and of the complainant's reputation for violence in the community. The trial court admitted testimony from the appellant, as well as from three other defense witnesses, regarding at least ten specific prior acts, known to the appellant, in which the complainant had either assaulted the appellant or another person.[2] The trial court did not permit, however, evidence of the complainant's reputation in the community for violence.

 As the trial court correctly observed, "[t]here is no dispute that to support a self-defense claim, the accused may show prior acts of violence committed by the victim about which the accused knew," because "[s]uch evidence is relevant to the reasonableness of the accused's fear of the victim." *Harris v. United States*, 618 A.2d 140, 143 (D.C.1992) (citing *Matter of M.W.G.*, 427 A.2d 440, 443 (D.C.1981); *United States v. Akers*, 374 A.2d 874, 877 (D.C.1977)). Evidence of the defendant's knowledge of the victim's reputation for violence is similarly admissible, because "it tends to support the contention that the accused acted from an honest and reasonable apprehension of imminent bodily harm because of the information imparted to him about the complainant." *King v. United States*, 177 A.2d 912, 913 (D.C. 1962); *see also Cooper v. United States*, 353 A.2d 696, 700 n. 8 (D.C.1975) (evidence of *either* victim's reputation for violence *or* victim's specific prior acts of violence, if known by the defendant at the time in question, may be admitted to show the reasonableness of defendant's fear of the victim). Except in homicide cases (where the person alleged to have been the aggressor is unavailable for questioning), however, neither evidence of the victim's prior violent acts nor evidence of reputation for violence can be admitted for the purpose of proving that the victim was the first aggressor. *See King*, 177 A.2d at 913.[3]

Our review of the record suggests there was confusion about the application and interplay of the specific act/reputation rules and the state-of-mind/first-aggressor rules. This confusion is evident in the bench conference concerning defense counsel's attempt to ask witness Larry Cato about the complainant's reputation for violence.[4]

2. The appellant is simply wrong factually when she states in her brief that the trial court prevented her from presenting evidence of the complainant's prior violent acts. The appellant seems to confuse the admission of the complainant's prior violent acts *per se*, with the trial court's limitation on defense cross-examination of the complainant to three specific acts of prior violence, discussed *infra*.

3. [O]nly in homicide cases may prior violent acts of the victim be introduced as evidence to prove that the victim was the first aggressor.... This is an exception to the general rule, which precludes evidence of any prior wrongs to prove that one acted in conformity with earlier conduct on a later occasion, carved out in recognition of the absence of the testimony of the homicide victim at trial.

*Harris v. United States*, 618 A.2d at 144 (citing *Akers*, 374 A.2d at 877); *McBride v. United States*, 441 A.2d 644, 652–53 (D.C.1982)).

4. Court: Your client testified to that—[Larry Cato's] knowledge about that is not relevant.

Defense Counsel: Yes it is because he can corroborate her reputation.

* * * * * *

In a self-defense case ... the evidence of the reputation of the victim is admissible and relevant.

██ The trial court correctly ruled to exclude evidence of the victim's reputation for violence to prove she was the first aggressor, since this was not a homicide case. That ruling extended to evidence of prior specific acts of violence. *See Harris*, 618 A.2d at 144. The court was also correct in admitting evidence of the complainant's past acts of violence only to show the reasonableness of the appellant's fear of the complainant, but erred in refusing to admit reputation evidence for that purpose. The error was harmless, however, given the abundance of specific acts of violence by the complainant introduced into evidence by several defense witnesses, including testimony by the appellant that the complainant had attacked her on previous occasions.[5] Thus, there was no abuse of discretion. *See Mercer v. United States*, 724 A.2d 1176, 1182 (D.C.1999) (evidentiary rulings reviewed for abuse of discretion); *(James) Johnson v. United States*, 398 A.2d 354, 366–67 (D.C.1979) (prejudice is an integral factor in review for abuse of discretion).

## 2. The Restriction of Defense Counsel's Cross-examination of the Complainant

██ The appellant further asserts that the trial court committed constitutional error by limiting the defense's cross-examination of the complainant to three specific prior acts of violence. Specifically, the appellant complains that this ruling unfairly forced defense counsel to choose from among the ten prior acts of violence that had been presented, see *supra*, note 2, thereby inhibiting the defense "from presenting a clear-cut case of self-defense by demonstrating [that] the known abusive behavior of the victim" justified the reasonableness of appellant's fear of the complainant. The appellant further argues that the trial court's limitation on cross-examination undermined her efforts to show the complainant's bias against the appellant.

██ "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106

---

Court: You are absolutely wrong on that, I disagree with you counsel.

\* \* \* \* \* \*

Court: The prior violent act is that—if that's what you want to do I will permit that but you are asking about reputation which is extrinsic proof.

Defense counsel: Very well. I would just like the record to reflect my position is that the plaintiff's reputation for violence and belligerence is relevant and admissible as to who was the aggressor in the encounter whether or not my client knew or did not know of this reputation.

Furthermore the extrinsic proof is admissible to corroborate that reputation.

Finally a specific act of violent conduct that is known or unknown to my client or know[n] to other members in the community are relevant as tending to show who was the aggressor in a case where the defendant

is charged with a serious crime and is claiming *self-defense*. I think the law is very clear on all those points.

Court: I disagree with you.... if you have proof of extrinsic evidence of prior violent acts I would permit her testifying with regard to that. But the general question of character of the victim I am going to go with what my understanding of the Harris case is and that is the general rule. We don't permit evidence to show who's the aggressor in a non-homicide case, all right.

5. *I.e.*, after pondering all of the specific act evidence admitted, as well as the trial court's refusal to admit reputation evidence, we can say with fair assurance that the judgment was not substantially swayed by the lack of that evidence. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

S.Ct. 292, 88 L.Ed.2d 15 (1985). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Even where extrinsic evidence of a victim's prior violence is relevant, the trial court may exclude such evidence if it is cumulative. *See Harris,* 618 A.2d at 145 (*citing Hurt v. United States,* 337 A.2d 215, 217 (D.C.1975)). The test for whether a trial judge has placed too great a limit on cross-examination is whether that limit "keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." *Springer v. United States,* 388 A.2d 846, 855 (D.C.1978) (rev'd on other grounds) (quoting *United States v. Harris,* 501 F.2d 1, 8 (9th Cir.1974)).

In this case, defense counsel was permitted to introduce through the appellant and three other witnesses at least ten prior violent acts committed by the complainant. The trial court then permitted the defense counsel to recall the complainant for re-cross-examination in order to impeach the truthfulness of her prior testimony that her relationship with the appellant was "okay" and "all right." As defense counsel started to cross-examine the complainant, the court called a bench conference:

> Court: Now, sir, you have a limited number of incidents you cannot go over. Is this the same incident you were talking about before and how many incidents are you going to go over because you can't just go over and over and over.
> Defense Counsel: What I intend to do your Honor, was go over the incidents that have already been testified to.

> Court: All right, what incidents are they?
> [Defense counsel listed three incidents]
> Court: All right.
> Defense Counsel: My client testified-
> Court: Okay, those are three.
> Defense Counsel: Yeah, that's it but there's one other if I may.
> Court: Three is sufficient.
> Defense: Then I would like to leave one and go back to the one that my client testified to which is that she cut another neighbor around September 2001 in the hand and had to go to court in Maryland for it. Patricia Hart testified to that as well, that she was afraid.
> Court: All right.
> Defense: So those would be three.
> [The court overrules an objection from the government, in favor of the appellant.]
> Defense: May I continue, Your Honor?
> Court: You may.

Defense counsel did not object to the court's limiting cross-examination of the complainant to three of her prior violent acts, and proceeded to cross-examine the complainant about the three acts he selected. Thus, we review the trial court's limitation for plain error. *See Foreman v. United States,* 633 A.2d 792, 795 (D.C. 1993) (where no objection is raised at trial to alleged constitutional error, the review is only for plain error, *i.e.,* whether the error was "obvious or readily apparent," and "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial").

As noted above, the trial court had discretion to place reasonable limitations to prevent cumulative evidence consistent with the appellant's right to cross-examine the complainant. The trial court's ruling limited—but did not preclude—this partic-

ular line of cross-examination and, therefore, was not obviously wrong. Nor was there significant prejudice. Appellant was able to cross-examine the complainant about three separate prior incidents of violence chosen by defense counsel to impeach the complainant's trial testimony and show her bias against the appellant. Appellant did not argue to the trial court—nor does she on appeal—that further cross-examination of the complainant regarding more prior acts of violence would have provided additional facts necessary for the jury's evaluation of the trustworthiness of the complainant or her bias against appellant. As a result, there was no plain error.[6]

### 3. *Sufficiency of the Evidence*

In reviewing a claim of insufficient evidence, this court reviews the evidence in the light most favorable to the government, "giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987). The court draws no distinction between direct and circumstantial evidence. *See (Michael) Taylor v. United States,* 662 A.2d 1368, 1371 n. 7 (D.C.1995) (citing *Jones v. United States,* 625 A.2d 281, 288 (D.C.1993)). Reversal of the trial court's denial of a motion for judgment of acquittal is warranted "only where there is no evidence upon which a reasonable [juror] could infer guilt beyond a reasonable doubt." *Curington v. United States,* 621 A.2d 819, 824 (D.C.1993) (quoting *Head v. United States,* 451 A.2d 615, 622 (D.C.1982)). The government's evidence need not "exclude every reasonable hypothesis consistent with innocence," *Bernard v. United States,* 575 A.2d 1191,

1194 (D.C.1990), nor compel a finding of guilt. *See (Maurice D.) Taylor v. United States,* 601 A.2d 1060, 1062 (D.C.1991). The court must be assured, however, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Since there was no eyewitness testimony at trial other than from the appellant and the complainant, the issue of who was the first aggressor came down to a credibility contest between the two women. Appellant's argument is essentially that, given the evidence of the complainant's prior violence against appellant, no reasonable jury could have found that the complainant was not similarly aggressive in this instance, and therefore no reasonable jury could find that the appellant did not act to defend herself in response. "[C]ontradictions among witnesses at trial are inevitable and are matters for the jury to resolve as they weigh all the evidence," *Payne v. United States,* 516 A.2d 484, 495 (D.C.1986) (citing *Graham v. Solem,* 728 F.2d 1533, 1541 (8th Cir.1984)), and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citing *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150 (1949)). The government presented evidence through the complainant that it was the appellant who assaulted her first, and despite the appellant's testimony to the contrary, the jury was entitled to believe the complainant. *See Booth v. United States,* 120 U.S.App. D.C. 39, 39, 343 F.2d 321, 321 (1965) (jury permitted to

---

6. Nor do we think, given the scope of permitted cross-examination, that there was constitutional error.

reject defendant's considerable claim of self-defense). Moreover, the jury was specifically prohibited by the case law discussed above from drawing the very inference that is the basis of the appellant's argument for reversal: that the complainant's prior acts of aggression prove she must have been the first aggressor in this instance. Finally, even if the jury had believed that the complainant attacked appellant first, the evidence of the injuries suffered by the complainant—coupled with the fact that appellant suffered none of consequence—permitted the jury to find that appellant forfeited her right of self-defense by using excessive force. *See Perry v. United States,* 137 U.S.App. D.C. 260, 262–63, 422 F.2d 697, 699–700 (1969) (citing *Inge v. United States,* 123 U.S.App. D.C. 6, 9, 356 F.2d 345, 348 (1966) (one has no right to use excessive force in self-defense)).

### 4. The Conflicting Verdicts

■■■■■ Appellant argues that since the jury acquitted her of possession of a prohibited dangerous weapon, it is logically impossible that the jury could have found beyond a reasonable doubt that she was guilty of aggravated assault *while armed.* A person can be found guilty of aggravated assault while armed if she commits a crime of violence while armed with a "dangerous or deadly weapon." D.C.Code § 22–4502(a) (2001). The weapon need not be a conventional weapon, but can be any instrument that the defendant uses as a weapon and which can cause serious bodily injury. *See Johnson v. United States,* 613 A.2d 888, 897 (D.C.1992) (hot clothes iron was a "dangerous weapon" when used by defendant to coerce and rape victim). Therefore, though the kitchen knife the appellant used is not specifically included in the nonexclusive list of examples given in the statute, the evidence was sufficient to sustain a verdict of aggravated assault while armed where the uncontested evidence shows that the appellant held the twelve-inch knife, used it against the victim, and caused serious bodily injury with it.

A person can be found guilty of possession of a prohibited dangerous weapon, on the other hand, if that person possessed a "knife with a blade longer than 3 inches, or other dangerous weapon" "with intent to use [it] unlawfully against another." *See* D.C.Code § 22–4514(b) (2001). The appellant possessed a kitchen knife with a twelve-inch blade and used it to assault the complainant. Since the same facts were present for the possession of a prohibited dangerous weapon charge as for the aggravated assault while armed charge, the jury's verdict acquitting of the first while convicting of the second appears inconsistent.

■■■■■ "It is now well-established that inconsistent verdicts by themselves do not mandate reversal. 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *United States v. Dobyns,* 679 A.2d 487, 490 (D.C.1996) (quoting *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (quoting *Steckler v. United States,* 7 F.2d 59, 60 (2d Cir. 1925))). As the Supreme Court explained in *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), a court cannot determine which of two inconsistent verdicts is correct simply by referring to the other. Rather, the court's focus is on whether the evidence presented at trial can sustain the jury's verdict of guilt. *See id.* Since sufficient evidence was presented at trial for a reasonable jury to find the appellant guilty of aggravated as-

sault while armed, the jury's acquittal on the prohibited dangerous weapon charge is not grounds for reversal.[7]

### 5. Serious Bodily Injury

▪▪▪▪▪ The appellant claims on appeal that the government failed to prove at trial that the victim suffered serious bodily injury, an essential element of aggravated assault. See D.C.Code § 22–404.01. In closing argument at trial, however, defense counsel stated that "[w]e're not on trial here to determine whether Ms. Arrington suffered significant permanent injuries. The government's proven that beyond a reasonable doubt. We'll concede that." The appellant is therefore estopped from questioning the sufficiency of the evidence of the complainant's injuries to constitute "serious bodily injury" on appeal. See Brown v. United States, 627 A.2d 499, 508 (D.C.1993) ("defendant may not take one position at trial and a contradictory position on appeal").

Appellant's trial concession was unremarkable as the government clearly produced sufficient evidence at trial to sustain a finding of serious bodily injury. In Nixon v. United States, 730 A.2d 145 (D.C. 1999), we defined "serious bodily injury" for purposes of aggravated assault as "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." Id. at 149–50. Evidence at trial showed that the victim was stabbed multiple times on both arms and in the vagina. The government introduced medical records showing that the wounds resulted in a four-day hospitalization, and a total of seventy-two stitches. The complainant testified that the wounds caused her a great deal of ongoing pain,[8] and she showed the scars on her arms to the jury. From this evidence, a reasonable jury could conclude that she suffered "serious bodily injury" because she experienced extreme physical pain and obvious disfigurement. See also Gathy v. United States, 754 A.2d 912, 918 (D.C.2000) (reasonable jury could infer from the nature of injuries and the victim's reaction to them that the injuries caused extreme pain).

▪▪▪▪ The appellant claims that the trial court's failure to instruct the jury on the elements of "serious bodily injury" also requires reversal. Because defense counsel did not object to the jury instructions at trial, we review for plain error. See Super. Ct.Crim. R. 52(b); (Linwood E.) Johnson v. United States, 387 A.2d 1084, 1088 (D.C.1978). As a general rule, since our holding in Nixon, the need to instruct the jury on the definition of serious bodily

---

7. The appellant also argues that because scienter is an element of possession of a prohibited dangerous weapon, and the jury acquitted her of that charge, the jury must have found that she did not "knowingly" possess the knife in question, and therefore sentencing enhancement for aggravated assault while armed was improper, since it, too, requires a showing of scienter. Appellant's conclusion that the jury found no scienter does not necessarily follow from its acquittal—the acquittal could have been for many possible reasons, including mistake or lenity. See Dobyns, 679 A.2d at 490. Moreover, appellant's surmise about the jury's conclusion is at odds not only with its guilty verdict but also with her trial testimony that she deliberately walked into the kitchen and picked up the kitchen knife to protect herself from the complainant's assault.

8. [Question] "How did the injuries to your arms feel after defendant stabbed you? [Complainant:] They hurt so bad, so much pain, pain. I couldn't do nothing but run." The complainant testified further that the pain continued after she left the hospital, and that she still felt pain at the time of her trial testimony.

injury should be obvious to the trial court. In this case, however, where the point was conceded by defense counsel in closing argument, the error was not obvious; nor was the appellant substantially prejudiced thereby, nor were the fairness and integrity of the trial undermined by the lack of instruction where the evidence of serious bodily injury was clear.[9] *See Riddick v. United States,* 806 A.2d 631, 639 (D.C. 2002) (no plain error where trial court did not instruct on the elements of serious bodily injury, but where the government nevertheless had produced ample evidence of the seriousness of the injuries in question).

For the foregoing reasons, the appellant's conviction is

*Affirmed.*

---

9. At trial, defense counsel objected in order to prevent detailed testimony from the complainant concerning her injuries on the ground that the seriousness of the injuries was obvious and such evidence could only be inflammatory. Having limited the testimony on this issue by strategically conceding the severity of the injuries, counsel on appeal cannot claim manifest injustice because the trial court disallowed further evidence of injury, consistent with the defense trial strategy.