James SWINTON, Appellant,

v.

UNITED STATES, Appellee.

No. 03–CF–364.

District of Columbia Court of Appeals.

Argued Jan. 17, 2006.
Decided June 22, 2006.

Winsome G. Gayle, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Roy W. McLeese, Assistant United States Attorney, were on the brief, for appellee.

Before RUIZ, GLICKMAN and KRAMER, Associate Judges.

GLICKMAN, Associate Judge:

Appellant James Swinton beat and, allegedly, raped his girlfriend. He was tried on charges of first-degree sexual abuse, aggravated assault, and lesser offenses. The jury was unable to reach a verdict on the sexual abuse charge but found Swinton guilty of aggravated assault. Because the evidence of "serious bodily injury" was insufficient to support this felony conviction, we reverse and remand for entry of a judgment of conviction on the lesser-included misdemeanor offense of simple assault.[1]

According to the government's evidence, Swinton attacked his girlfriend, J.G., while he was visiting her in her apartment. Swinton, who had been drinking heavily, became angry with J.G. and began to abuse her, first verbally and then with his fists. J.G. testified that an enraged and apparently intoxicated Swinton punched her on her arms and legs and forced her to have sexual intercourse with him against her will. J.G. escaped after Swinton eventually fell asleep. She sought refuge the following morning with a friend, who summoned the police on her behalf. J.G. reported that she had been beaten and raped. The police took her to Howard University Hospital's Rape Crisis Center, where a nurse performed physical and gynecological examinations of her and photographed her injuries. Those injuries, which the responding police officer described as "minor," consisted solely of three or four bruises, a few or several centimeters in diameter, on her left arm and inner thighs. After being examined, J.G. was told to treat her bruises with ice packs and was discharged from the hospital. She was not given or prescribed any pain medication.

Five months later, J.G. testified at trial that she was "hurt bad" and had screamed in pain as Swinton pummeled her with his fists, and that she was still "hurting badly" hours later, when she went to the hospital. At one point during her cross-examination, J.G. remarked that she was "still bruised up to this day." She did not display her bruises to the jury, and she was not asked to describe her residual injuries further. The government presented no other evidence as to the nature, extent or duration of J.G.'s injuries.

Swinton argues that the foregoing evidence was insufficient to permit a reasonable trier of fact to find that he inflicted "serious bodily injury," an essential element of the statutory crime of aggravated assault. See D.C.Code § 22–404.01(a) (2001).[2] The term "serious bodily injury" has a restrictive meaning. We have construed it to denote only "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." Nixon v. United States, 730 A.2d

---

1. Swinton also was charged with felony threats to do bodily harm and destruction of property. The trial judge granted Swinton's motion for judgment of acquittal with respect to the threats charge, and the jury acquitted Swinton of destruction of property.

2. The statute provides as follows:

(a) A person commits the offense of aggravated assault if:

(1) By any means, that person knowingly or purposely causes serious bodily injury to another person; or

(2) Under circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury.

D.C.Code § 22–404.01(a).

145, 149, 150 (D.C.1999) (reversing aggravated assault convictions because government failed to establish that victims' bullet wounds met the definition of "serious bodily injury"); *see also Zeledon v. United States,* 770 A.2d 972, 977 (D.C.2001) (noting that "even injuries such as knife or gunshot wounds are not per se 'serious bodily injury' "). Our decisions since *Nixon* have emphasized "the high threshold of injury" that "the legislature intended in fashioning a crime that increases twentyfold the maximum prison term for simple assault." *Jenkins v. United States,* 877 A.2d 1062, 1069 (D.C.2005) (internal quotation marks and citations omitted). The cases in which we have found sufficient evidence of "serious bodily injury" to support convictions for aggravated assault thus have involved grievous stab wounds,[3] severe burnings,[4] or broken bones, lacerations and actual or threatened loss of consciousness.[5] The injuries in these cases usually were life-threatening or disabling. The victims typically required urgent and continuing medical treatment (and, often,

surgery), carried visible and long-lasting (if not permanent) scars, and suffered other consequential damage, such as significant impairment of their faculties. In short, these cases have been horrific. Until now we have not had a case of "serious bodily injury" predicated on an unarmed assault in which the victim's only physical injuries were bruises. Without minimizing either J.G.'s ordeal or Swinton's culpability, we are compelled to recognize that the harm J.G. suffered does not appear to be of the same order of magnitude as that suffered by the victims in all our other aggravated assault cases.

■■■■ That observation is not dispositive. Notwithstanding the uniqueness of this case, the government asks us to uphold Swinton's conviction for aggravated assault. The government argues that it presented sufficient evidence at trial that Swinton inflicted "serious bodily injury" within the meaning of the aggravated assault statute because the jury reasonably

3. *See Jenkins,* 877 A.2d at 1071 (multiple deep stab wounds to victim's chest, stomach and arm, inflicted with a seven- or eight-inch knife); *Baker v. United States,* 867 A.2d 988, 995, 1009 (D.C.2005) (victim stabbed in stomach, head and arm, with substantial loss of blood); *Finch v. United States,* 867 A.2d 222, 225 (D.C.2005) (stabbing in neck resulting in "two life-threatening lacerations to his right carotid artery"); *Hart v. United States,* 863 A.2d 866, 875 (D.C.2004) ("the victim was stabbed multiple times on both arms and in the vagina"); *Anderson v. United States,* 857 A.2d 451, 464 (D.C.2004) (victim stabbed in the side through her kidney); *Riddick v. United States,* 806 A.2d 631, 641 (D.C.2002) (repeatedly stabbed in the neck and elsewhere with a broken stick and a piece of glass, victim suffered heavy bleeding and severe injuries, "including a neck wound that transected muscle and nerve which necessitated emergency exploratory surgery"); *Wilson v. United States,* 785 A.2d 321, 329 (D.C.2001) (laceration of victim's eyeball); *Zeledon,* 770 A.2d at 974 (appellant "stabbed his wife re-

peatedly with a knife and caused her, among other things, arterial bleeding and a broken collarbone").

4. *See Burton v. United States,* 818 A.2d 198, 200 (D.C.2003) (elderly victim burned with an electric iron); *Hudson v. United States,* 790 A.2d 531, 533 (D.C.2002) (jury could find that appellant "maliciously beat and burned the victim, leaving a permanent scar on her leg from a clothes iron").

5. *See Anderson,* 857 A.2d at 464–65 (in "shod foot assault," appellant stomped on victim's face with both feet; facial injuries included broken nose and sinus bone); *Beaner v. United States,* 845 A.2d 525, 529, 538 (D.C.2004) (struck in the back of the head three times with a gun, victim lost consciousness); *Gathy v. United States,* 754 A.2d 912, 914, 918–19 (D.C.2000) (victim struck in the face with a beer bottle, which broke, resulting in deep cuts around his left eye and across his nose and left cheek, a chipped bone in his nose, and a near loss of consciousness).

could find that J.G.'s injuries involved (in the words of the definition adopted in *Nixon* ) either "protracted and obvious disfigurement" or "extreme physical pain." In each respect, however, we disagree. Even viewing the evidence in the light most favorable to preserving the jury's verdict, we conclude that there was sufficient evidence of neither "protracted and obvious disfigurement" nor "extreme physical pain." [6]

■ First, though we do not dismiss even ordinary bruises as inconsequential, it is open to debate whether contusions of the kind and number that J.G. received on her arm and inner thighs should be deemed disfigurements within the meaning of the aggravated assault statute. "To disfigure is to make less complete, perfect or beautiful in appearance or character." *Perkins v. United States*, 446 A.2d 19, 26 (D.C.1982) (internal quotation marks and citations omitted). Without some qualification, however, that definition is too broad to suit the purposes of the aggravated assault statute, for it would encompass even the most minor bruises, scratches and scrapes. Every black eye, for example, surely is not to be equated with "serious bodily injury." In *Nixon*, we stated

that our definition of "serious bodily injury" is "consistent with that followed in the majority of jurisdictions," which require "a *serious* permanent or physical disfigurement" (emphasis added). 730 A.2d at 150. We also have said that "[t]o be permanently disfigured" for the cognate crime of malicious disfigurement "means that the person is appreciably less attractive or that a part of his [or her] body is to some appreciable degree less useful or functional than it was before the injury." *Perkins*, 446 A.2d at 26. Plainly, it is difficult to be precise about the degree of seriousness required, but we think it fair to conclude that only more severe and extensive bruising than J.G. sustained should be treated as disfigurements for purposes of the crime of aggravated assault; to do otherwise likely would be to trivialize the statute and to disregard the "high threshold of injury" it erects. *Jenkins*, 877 A.2d at 1069; *cf. Stroman v. United States*, 878 A.2d 1241, 1246 (D.C.2005) (holding, in a prosecution for attempted possession of a prohibited weapon, that a cut on the forehead requiring fifteen stitches, "though more than a mere bruise," was not shown to be a "protracted and obvious disfigurement").

6. In considering whether the evidence in a criminal trial was sufficient to support a conviction, our review is deferential, but it is not a rubber stamp. We view the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact. *Rivas v. United States*, 783 A.2d 125, 134 (D.C.2001) (en banc). Nonetheless, we also honor our "obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a jury behaving rationally really could find it persuasive beyond a reasonable doubt." *Id.* The requirement of proof beyond a reasonable doubt "means more than that there must be some relevant evidence in the record in support of each essential element of the charged offense." *Id.*

"Slight evidence is not sufficient evidence; a 'mere modicum' cannot 'rationally support a conviction beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We draw a line, moreover, between rational inference and mere speculation; gaps in the evidence or the jury's chain of reasoning are not to be filled by conjectures, guesses or assumptions. *Id.* " '[I]f the evidence, when viewed in the light most favorable to the government, is such that a reasonable juror *must* have a reasonable doubt as to the existence of any of the essential elements of the crime,' then the evidence is insufficient and we must say so." *Id.* (quoting *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987)) (emphasis in the original).

■ Even assuming, though, that J.G.'s bruises qualify as disfiguring, there was a dearth of evidence that her disfigurement was "protracted and obvious." The word "protracted" conveys a sense of prolongation beyond a short recovery period,[7] and "obvious" surely indicates a degree of genuine prominence.[8] But bruises fade, often rapidly. J.G.'s unelaborated comment that she was "still bruised up" five months after her altercation with Swinton was not enough to establish whether or how long her bruises remained prominent, or even visible. *Cf. Hart,* 863 A.2d at 875 (victim displayed her scars to the jury, demonstrating that her stabbing injuries were protracted and obvious). The government presented no other evidence that J.G. suffered "protracted and obvious disfigurement."

■ There likewise was insufficient evidence that J.G. endured "extreme physical pain." The term is regrettably imprecise and subjective, and we cannot but be uncomfortable having to grade another human being's pain. Nonetheless, the adjective "extreme"—typically defined as "existing in the highest or the greatest possible degree"[9]—unambiguously indicates that the level of pain must be exceptionally severe if not unbearable. *Cf. Nixon,* 730 A.2d at 150 (referring to "immobilizing pain"). In *Alfaro v. United States,* for example, this court held that even the "vicious" whipping of a naked child with a wet telephone cord did not create "the kind of 'extreme' pain that can reasonably be compared to or equated with any of the categories of serious injury enumerated by the legislature and adopted by this court in *Nixon."* 859 A.2d 149, 162 (D.C.2004).[10] The extremity of the victim's pain must be established by probative evidence, not left to the jury's untethered speculation. The burden imposed on the government by this requirement is not an unreasonable one. A victim need not use the specific word "extreme" to describe her pain, and even absent graphic descriptions of suffering from the victim herself or other witnesses, a reasonable juror may be able to infer that pain was extreme from the nature of the injuries and the victim's reaction to them. *See Anderson,* 857 A.2d at 464; *Gathy,* 754 A.2d at 918. But in the present case, as in *Alfaro,* "the government has not drawn our attention to any evidence that the pain was extreme or unbearable." 859 A.2d at 162, n. 13. There is no dispute, of course, that J.G. suffered *significant* physical pain; she testified that she "hurt bad" and screamed in pain when Swinton punched her, and undoubtedly her bruises were both painful in themselves and evidence of the pain she endured. But that is all the evidence we have. Comparable evidence could be presented in virtually any prosecution for assault and battery, as indeed it was in *Alfaro.*[11] Without

---

7. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) (hereinafter, "WEBSTER'S THIRD") at 1826 (defining "protracted" as "draw[n] out or lengthen[ed] in time or space: continue[d], prolong[ed]").

8. *See* WEBSTER'S THIRD at 1559 (defining "obvious" as "so placed as to be easily or inevitably perceived or noticed; ... capable of easy perception").

9. WEBSTER'S THIRD at 807.

10. *Alfaro,* like *Stroman, supra,* involved a prosecution for attempted possession of a prohibited weapon. The case turned on whether the telephone cord was likely to produce death or "great bodily injury" by the use made of it. We construed the term "great bodily injury" in light of the definition of "serious bodily injury" used for aggravated assault. 859 A.2d at 161–62. Our subsequent decision in *Stroman* treated "great bodily injury" as equivalent to "serious bodily injury." *See* 878 A.2d at 1245.

11. In *Alfaro,* "there was testimony that at least one of the boys cried because the whipping hurt," 859 A.2d at 162, n. 13, and the

more, such evidence is not enough to support a finding beyond a reasonable doubt that J.G.'s pain was not merely significant, but "extreme." [12]

For lack of sufficient evidence that Swinton inflicted "serious bodily injury" within the meaning of D.C.Code § 22–404.01(a), we reverse his conviction of aggravated assault and remand the case for entry of a superseding judgment of conviction on the lesser included offense of simple assault, with re-sentencing as appropriate. *See Willis v. United States,* 692 A.2d 1380, 1383 (D.C.1997); *Jennings v. United States,* 431 A.2d 552, 555 (D.C.1981).

*So ordered.*

boys' bruises were described as "loop-shaped markings, 'reddish pink' in color, on various parts of the boys' bodies" that "remained visible two weeks after the whipping took place." *Id.* at 153.

12. There was no evidence that J.G. complained of great physical pain, or otherwise manifested that she was in such a state, to any of the people who saw her after the assault. It is relevant, too, that J.G. did not receive any pain medication at the hospital, that she was not prescribed any medication upon her discharge, and that she simply was told to treat her bruises with ice packs. *Cf. Jenkins,* 877 A.2d at 1071–72 (victim complained of pain from the stab wounds and was prescribed pain medication and instructed to limit physical activity; responding officer also testified that victim was in a great deal of pain.); *Hart,* 863 A.2d at 875 & n. 8 (hospitalized victim testified that her multiple stab wounds caused her a great deal of continuing pain, even after she left the hospital); *Riddick,* 806 A.2d at 641 (victim recounted to jury how she moaned in pain and cried during and after the assault).