### III.

**In re P.F., Appellant.**

**No. 05–FS–1467.**

District of Columbia Court of Appeals.

Argued May 28, 2008.
Decided July 24, 2008.

and our independent research has likewise disclosed nothing helpful in this regard.

Corinne Beckwith, Public Defender Service, with whom James Klein, Public Defender Service, and Winsome G. Gayle, Public Defender Service, were on the brief, for appellant.

Janice Y. Sheppard, Office of the Solicitor General, with whom Linda Singer, At-

torney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Attorney General, were on the brief for appellee.

Before KRAMER, Associate Judge, FARRELL, Associate Judge, Retired,[*] and KING, Senior Judge.

KING, Senior Judge:

Following a factfinding hearing in the Family Court of the Superior Court of the District of Columbia, P.F. was adjudicated guilty of aggravated assault while armed, in violation of D.C.Code §§ 22–404.01, –4502 (2001), armed carjacking, in violation of D.C.Code § 22–2803(b)(1), malicious destruction of property, in violation of D.C.Code § 22–303, and carrying a dangerous weapon, in violation of D.C.Code § 22–4504(a), for events occurring on July 8, 2005. On appeal, P.F.'s only claim is that there was insufficient evidence of serious bodily injury to support an adjudication of guilt with respect to the aggravated assault while armed charge. We agree. Accordingly, we reverse the adjudication of guilt on that charge and remand to the trial court with instructions to vacate the finding and to enter a finding of guilty on the lesser included offense of assault with a dangerous weapon.

I.

In the early morning hours of July 8, 2005, the complainant, Dawn Marshall, was in her car driving to a Shop and Express convenience store, located at 14th and Chapin Streets, N.W. At a traffic light a short distance from the store, Marshall stopped behind a gold Toyota Camry from which P.F. and another male exited and approached Marshall's car. P.F. struck

---

[*] Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on July 1, 2008.

Marshall's car with a baseball bat, shattering the driver's side window of the car. When P.F. attempted to enter her car, Marshall moved to the passenger seat. He then began to swing the bat inside Marshall's vehicle, striking her on her right wrist. Eventually, Marshall exited the vehicle and was on the ground when P.F. and the other male struck her with the aluminum baseball bats approximately five times. P.F. then drove away Marshall's vehicle while his companion drove away in the Camry.

Marshall then walked one block to the Shop and Express parking lot where she located Metropolitan Police Officer Maurice Scott. Marshall was crying as she reported the attack to the officer. She complained that her shoulder was injured and she showed the officer a cut on her finger. Officer Scott then relayed Marshall's description of the men and her vehicle over the police radio. Approximately fifteen to twenty minutes later Marshall's car was located and Officer Scott drove Marshall to that location where she inspected the vehicle and determined that several items were missing.

Five days later, Marshall spotted the gold Camry in the parking lot of the Shop and Express. She then went to a nearby gas station where she alerted police officers in a patrol car, who arrested P.F. and another male shortly afterward.

At the factfinding hearing, Marshall testified that she was struck with the baseball bats on her right shoulder blade, her right wrist and her right chest. The attack left her with "bad bruises" on her chest and back, a cut on her finger, and a swollen wrist. She testified that she sought treatment for her injuries at Washington Hospital Center, where she was X-rayed. Treatment included a splint for her wrist and a supply of painkillers, which she took for one week. There is no indication in the record, however, as to the date or time Marshall went to Washington Hospital Center, how she was transported to the hospital, or whether the painkillers Marshall received were prescription strength or simply over-the-counter medications. In addition to her testimony regarding the treatment she received at the hospital, Marshall testified that she suffered some inconvenience as a result of the injury to her wrist, including difficulty completing everyday tasks such as taking care of her children, driving her car, and getting around.

On September 26, 2005, the trial court adjudicated P.F. guilty of aggravated assault while armed, finding that Marshall's injuries caused "extreme physical pain" and therefore amounted to "serious bodily injury," which is an element of the offense of aggravated assault.

## II.

■■■■ An adjudication of guilt for aggravated assault requires that the government prove that a defendant "(1) caused serious bodily injury [to another person]; and (2) either 'knowingly or purposely cause[d] serious bodily injury to [the person]'; or '[u]nder circumstances manifesting extreme indifference to human life, ... intentionally or knowingly engage[d] in conduct which create[d] a grave risk of serious bodily injury to [the person], and thereby cause[d] serious bodily injury[.]'" *Nixon v. United States*, 730 A.2d 145, 149 (D.C.1999) (quoting D.C.Code §§ 22–404.1, –3202). Serious bodily injury is defined as injury which causes "a substantial risk of death, unconsciousness, *extreme physical pain*, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Id.* (emphasis supplied; internal citation omitted). In reviewing challenges to the sufficiency of

the evidence, "[w]e view the evidence in the light most favorable to the government, giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Swinton v. United States,* 902 A.2d 772, 776 n. 6 (D.C.2006) (internal citation omitted).

▮▮▮ The decisions of this court have emphasized the "high threshold of injury" that the legislature intended for a crime involving serious bodily injury, referring to these types of cases as "horrific." *Id.* at 775. Where a finding of serious bodily injury is based on extreme physical pain, as it was here, "the level of pain must be exceptionally severe if not unbearable." *Id.* at 777. Furthermore, "the extremity of the victim's pain must be established by probative evidence," a burden which falls to the government, and "not left to the [factfinder's] untethered speculation." *Id.*

▮▮▮ A victim need not use the word "extreme" to define the pain suffered; rather, the severity of the pain may be inferred from the nature of the injuries and the victim's reaction to them. *Id.; see also Jackson v. United States,* 940 A.2d 981, 991 (D.C.2008) (where victim was "able, without any assistance, to escape from appellant in the midst of the assault," the victim did not suffer extreme physical pain necessary to support a finding of serious bodily injury); *Bolanos v. United States,* 938 A.2d 672, 682 (D.C.2007) (testimony from victim that he could not breathe, his muscles hurt, his chest was in pain, and he kept thinking that he was going to die, as well as evidence that the victim was prescribed pain medication both during his hospital stay and upon discharge, was sufficient to sustain a finding of extreme physical pain); *Nixon,* 730 A.2d at 148–51 (no serious bodily injury where the pain of the injury did not immobilize the victim or cause the victim to lose con-

sciousness and there was no other evidence from either the victim or health care professionals as to the nature and extent of the victim's injuries).

▮▮▮ Moreover, a victim's statements regarding pain are not alone sufficient to support a finding of serious bodily injury. *Earl v. United States,* 932 A.2d 1122, 1132 (D.C.2007) (victim's injury of a sprained wrist that required a soft cast did not permit a jury to reasonably infer that the victim suffered extreme physical pain, despite victim's characterization of the pain as "severe"); *Swinton,* 902 A.2d at 777–78 (even though victim suffered *"significant* physical pain," based on her testimony that she "hurt bad," victim did not suffer the type of extreme physical pain necessary to support a finding of serious bodily injury) (emphasis in original).

Based on the evidence presented at the factfinding hearing here, we conclude that the government failed to show that Marshall suffered the type of extreme physical pain necessary to support a finding of serious bodily injury. At no time after the attack did Marshall state she was in extreme pain, nor did she ever lose consciousness or claim to have felt faint as a result of her injuries. In fact, just as the victim in *Jackson* did, Marshall walked away from the scene of the attack on her own accord. When reporting the attack to Officer Scott, she gave no indication that her pain was severe or unbearable. Furthermore, there is no evidence that she sought immediate medical care; in fact, before seeking medical care, Marshall accompanied Officer Scott to the place where her car was found, some twenty minutes after the initial assault. Finally, Marshall did not even mention to Officer Scott the injury to her wrist, arguably the most severe of her injuries, when she initially spoke to him.

Moreover, when Marshall eventually sought treatment—at a time not indicated

in the record—the treatment she received does not establish that Marshall was suffering extreme pain. Although she received pain medication, the record is silent as to what medication she was given or whether that medication was prescription strength. We conclude that Marshall's sprained wrist and bruising are not appreciably different from the injuries suffered by the victims in *Earl* and *Swinton,* where we held there was insufficient evidence to support a finding of extreme physical pain. Finally, Marshall's unelaborated statements regarding the difficulty she had in performing everyday tasks following the attack are insufficient to demonstrate that she suffered the type of "exceptionally severe if not unbearable" pain necessary for a finding of serious bodily injury.

While Marshall's injuries were certainly significant and we have no doubt that she experienced a frightening and painful unprovoked attack, her injuries and the pain she suffered do not meet the high standard of "extreme if not unbearable pain" required by our precedents. Because no reasonable factfinder could infer that Marshall's injuries caused her extreme physical pain and therefore that she suffered serious bodily injury as a result of the assault, there was insufficient evidence to support an adjudication of guilt on the aggravated assault charge. Accordingly, we reverse the adjudication of guilt on that charge and remand for entry of a finding of guilt on the lesser included offense of assault with a dangerous weapon.[2] *See Gathy v. United States,* 754 A.2d 912, 919 (D.C.2000).

*So ordered.*

---

2. The parties agree that if we conclude that there has been a failure of proof on the aggravated assault charge, there is sufficient evidence to prove assault with a dangerous weapon.