**Joseph A. BELL, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 95–CF–57.

District of Columbia Court of Appeals.

Argued May 14, 1996.
Decided June 6, 1996.

Gregory A. Cotter, Washington, appointed by this court, for appellant.

John Crabb, Jr., Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Stephen J. Pfleger, Assistant United States Attorneys, were on the brief, for appellee. Henry K. Kopel, Assistant United States Attorney, also entered an appearance, for appellee.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of possession of cocaine with intent to distribute it, in violation of D.C.Code § 33–541(a)(1) (1993). His principal argument on appeal is that the trial court erred in admitting what he regards as "other crimes" evidence, namely, evidence that he had engaged in several apparent drug sales shortly before he was arrested. We affirm.

I

On a summer afternoon in broad daylight, while appellant stood on the sidewalk in front of a methadone clinic on New Jersey Avenue, S.E., several other persons gathered around him. One by one, they gave him money in exchange for small objects which he disbursed from a red kerchief or bandana that he held in his left hand, and each of them left as soon as his or her transaction had been completed. From inside a truck parked nearby, Officer Gregory Wilson of the Metropolitan Police watched these events through a pair of binoculars. Believing that appellant was selling drugs, Wilson tried to contact an arrest team comprised of other officers but was unable to reach them on the radio.

After a few minutes, appellant started walking south on New Jersey Avenue and then turned left on L Street; Wilson followed in his truck, apparently unobserved. When appellant came to a stop on L Street about fifty feet east of New Jersey Avenue, two more people came up to him. Again they gave him money, and he in turn gave them small objects from the red kerchief he was holding in his hand. Officer Wilson watched these exchanges as he sat in his truck at the intersection of New Jersey Avenue and L Street, waiting to turn left. After he made the turn, he saw yet another person approach appellant and give him money; appellant once again reached into the red kerchief and handed that person a small object.

All this time Officer Wilson had been trying unsuccessfully to get in touch with his arrest team. Then, just as appellant completed his last sale, Wilson saw two other officers whom he knew, Michael Jewell and Charles Sanders, in another car a short distance ahead of him. He drove up to where they could see him and signaled them to turn on their radio. When they did, Officer Wilson told them that he had just seen a man selling drugs, described him, and gave his location. Jewell and Sanders drove to that location and saw appellant, who matched the

description they had received from Wilson. They jumped out of their car, but when appellant saw them,[1] he ran. As he fled, he dropped an object from the red kerchief he was carrying; when it landed beside him, he kicked it away.

Officer Sanders caught up with appellant, detained him, and frisked him, finding $785.00 in cash in his pockets. Appellant laid the red kerchief he had been carrying on the trunk of a car, and Officer Jewell seized it. Jewell also retrieved the object that appellant had thrown to the ground and then kicked away, which turned out to be a plastic bag containing eleven smaller plastic ziplock bags, each one filled with a white powder.[2] Jewell and Sanders contacted Officer Wilson and told him that they had arrested a suspect, and a moment later Wilson drove past and identified appellant by radio as the man he had seen selling drugs. The total time that elapsed from the moment when Officer Wilson first saw appellant making a sale on New Jersey Avenue until he was arrested by Officers Jewell and Sanders was less than fifteen minutes.

Appellant's defense was, in essence, that the police had arrested the wrong man. He called three witnesses—his wife, his employer, and a long-time friend—but he did not testify himself. To refute the employer's testimony, Officer Sanders testified in rebuttal that appellant had said at the time of his arrest that he was unemployed.

II

 Appellant argues that the evidence of his transactions with the other people on the street in the minutes before his arrest amounted to evidence of other crimes, and was therefore inadmissible under *Drew v. United States*, 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964), and its myriad progeny. The government argues that the evidence was admissible under *Toliver v. United States*, 468 A.2d 958, 960–961 (D.C. 1983), because it enabled the jury to under-

---

1. Officers Jewell and Sanders were in plain clothes and driving an unmarked car, but they were wearing their badges on chains around their necks and were thus identifiable as police officers.

2. A chemical analysis later established that the powder was cocaine.

stand the circumstances which led up to appellant's arrest and eventual prosecution. We think the government has the better argument.

■ For ninety years[3] it has been the law in the District of Columbia that, with certain well-recognized exceptions, evidence of other crimes committed by the defendant is generally inadmissible in a criminal trial to prove the defendant's guilt. *Drew* is the case traditionally cited for this principle. It is also the law, however, that evidence of criminal conduct by the defendant at a time and place close to the crime for which the defendant is on trial "is admissible when relevant to explain the immediate circumstances surrounding the offense charged." *Toliver, supra,* 468 A.2d at 960 (citations omitted). We held in *Toliver* that "this limited class of evidence" is not other crimes evidence at all—*i.e.,* not subject to analysis under the *Drew* line of cases—"because it is too intimately entangled with the charged criminal conduct." *Id.; accord, e.g., Hilliard v. United States,* 638 A.2d 698, 707 (D.C. 1994) (evidence admitted under *Toliver* "is not other crimes evidence"); *Settles v. United States,* 615 A.2d 1105, 1109 (D.C.1992) (*Toliver* evidence "is properly admitted without the *Drew* safeguards"). We have been fairly strict in defining "immediate circumstances," as that term is used in *Toliver,*[4] but otherwise we have not imposed limits on the admission of such evidence, provided its probative value is not outweighed by its prejudicial effect.[5] *Drew* and *Toliver* are mutually exclusive. If evidence is admissible under *Toliver,* the jury may hear it without restriction, and no *Drew* issue even arises. Conversely, if evidence is offered and admitted under one of the *Drew* (or *Drew*-type) exceptions, *Toliver* becomes irrelevant.

We are satisfied that the challenged evidence here was properly heard by the jury because it placed appellant's unlawful possession of cocaine in its full context. The previous drug sales (assuming that is what they were) took place less than two blocks away, and less than fifteen minutes before appellant was arrested and the bag of cocaine packets was recovered from where he had dropped it. The red kerchief played a significant part in both the earlier transactions and the seizure of the cocaine. Most importantly, the prior transactions explained to the jury why Officers Jewell and Sanders approached appellant, arrested him, and searched his pockets and the area where he dropped the plastic bag.

■ In cases with similar facts, this court has consistently held that evidence of prior drug sales was admissible in a trial on drug-related charges to prove the surrounding circumstances. For example, in *Green v. United States,* 440 A.2d 1005 (D.C.1982), the defendant had made two marijuana sales shortly before his arrest for possession of marijuana. We held that "the evidence of [those] sales was properly admitted to explain the immediate circumstances surrounding the commission of the crime charged." *Id.* at 1006. We also concluded:

> [The] probative value [of this evidence], particularly in placing in a context and making comprehensible to the jury the actions of the police in approaching, arresting, and searching appellant, outweighed any prejudicial effect. . . . Given the facts of this case, the law did not require that the prosecution sanitize its evidence and begin its presentation in the middle of the sequence of interrelated events.

*Id.* at 1007 (citations and footnote omitted). In *Toliver* itself, the defendant was arrested shortly after the police saw him exchanging white packets for money with six other persons. As the arresting officers approached,

---

3. *See Burge v. United States,* 26 App. D.C. 524, 536 (1906) (citing *People v. Molineux,* 168 N.Y. 264, 291–294, 61 N.E. 286, 294 (1901)).

4. " 'Immediate circumstances' in this context are events so closely related to the charged offense in time and place that they are 'necessary to complete the story of the crime on trial.' " *Williams v. United States,* 549 A.2d 328, 332–333 (D.C. 1988) (citation omitted); *see* J.W. STRONG, *et*

*al.,* MCCORMICK ON EVIDENCE § 190, at 799 (4th ed. 1992) (evidence admissible if it "complete[s] the story of the crime on trial by placing it in the context of *nearby and nearly contemporaneous* happenings" (footnote omitted; emphasis added)).

5. *See Tabron v. United States,* 410 A.2d 209, 214 (D.C.1979) (citing cases).

he threw a white object on the ground which turned out to be a packet of heroin. We upheld the admission of the six prior sales, citing *Green* and several other cases. Again in *Bernard v. United States*, 575 A.2d 1191 (D.C.1990), we held that evidence tending to show that the defendants were engaged in illicit drug sales "was admissible in any event to place in an understandable context the story of the crime." *Id.* at 1196 n. 7 (citing *Toliver*). Such evidence is intrinsic to the crime charged, *see Ford v. United States*, 647 A.2d 1181, 1184 n. 7 (D.C.1994), and is therefore admitted as direct evidence of guilt.[6]

We hold accordingly that the trial court committed no error in admitting evidence of appellant's activities during the fifteen minutes immediately preceding his arrest.

### III

Appellant makes three secondary arguments, but because they all depend on his primary argument which we have just rejected, they must also fail.

■ *First,* appellant complains of certain remarks made by the prosecutor in his opening statement and his closing argument, as well as his examination of Officer Wilson on the subject of the prior "drug sales." Defense counsel never objected to any of these comments,[7] so that appellant must now demonstrate plain error in order to prevail on this ground, as he concedes in his brief. *See, e.g., Bowman v. United States*, 652 A.2d 64, 70 (D.C.1994) ("most of the prosecutor's allegedly improper remarks must be reviewed for plain error because, with one exception, defense counsel did not object to them"); *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) (defining plain error). "When there has been no objection at trial, reversal of a conviction based on improper prosecutorial argument is appropriate only in a 'particularly egregious' case, when 'a miscarriage of justice would otherwise result.'" *McGrier v. United States*, 597 A.2d 36, 41

(D.C.1991) (citing *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). Appellant's claim of error does not pass the *Young* test. We find no plain error and hence no basis for reversal.

■ *Second,* appellant contends that the trial court should have given the jury a cautionary instruction on the limited use it could make of the challenged evidence. Once again, however, defense counsel did not request a limiting instruction and did not object to the instructions actually given by the court; hence he must now establish plain error. *McKinnon v. United States*, 644 A.2d 438, 441 n. 6 (D.C.), *cert. denied,* —— U.S. ——, 115 S.Ct. 523, 130 L.Ed.2d 428 (1994); *Jones v. United States*, 477 A.2d 231, 241 (D.C.1984). He cannot do so because no limiting instruction is required when *Toliver* evidence is admitted. Indeed, in the *Toliver* case itself, although the trial judge gave a cautionary instruction, we held that it was "unnecessary." 468 A.2d at 961; *accord, e.g., Lee v. United States*, 471 A.2d 683, 686 (D.C. 1984). Thus, in the case at bar, not only was there no plain error in the failure to give a limiting instruction; there was no error at all.

*Third,* appellant maintains that his counsel was ineffective because he failed to challenge the admission of the *Toliver* evidence, failed to object to the prosecutor's comments, and failed to request a limiting instruction. The premise of this argument, of course, is that the *Toliver* evidence should not have been admitted, a premise which we have rejected. It necessarily follows that appellant cannot make the showing, required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "that counsel's performance was deficient." *Id.* at 687, 104 S.Ct. at 2064; *cf. Taylor v. United States*, 603 A.2d 451, 459 (D.C.) ("an attorney's failure to file a particular motion will not be regarded as ineffective assistance unless such a motion, if filed, would in all likelihood have been

---

6. The government argues in the alternative that the evidence here at issue was properly admitted under one or more of the established *Drew* exceptions. We need not consider this argument, since we hold that it was properly admitted under *Toliver.*

7. Appellant is represented by new counsel on appeal.

granted"), *cert. denied,* 506 U.S. 852, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992). Counsel did in fact contest the admissibility of the *Toliver* evidence at the pre-trial hearing, but after the court ruled it admissible, he had no valid ground for objecting to it at trial. Appellant's claim of ineffective assistance is thus without merit.

The judgment of conviction is therefore

*Affirmed.*

FARRELL, Associate Judge, concurring:

I join the court's opinion and write briefly only to explain my understanding of what we mean when we say *"Drew* and *Toliver* are mutually exclusive." *Ante* at 1047. I think we mean nothing more than that when *Drew* evidence is at issue, we apply one set of rules of admissibility, and when *Toliver* (or "immediate circumstances") evidence is involved we apply a simpler test, for a reason I explain later.

Certainly the two doctrines do not conceptually exclude one another. That would be true if *Toliver* proof were purely evidence of the criminal act charged, not at the same time proof of another crime: the same criminal act is not an "other act." But no one would argue that appellant's repeated apparent sales of drugs in the minutes before he dropped the eleven ziplock bags with cocaine were the same act (rather than part of the same "series of acts") as his possession of those bags. Factually the acts were different, and they are defined differently as crimes. Moreover, the sales fit neatly into one of the categories of evidence traditionally admissible under *Drew:* they explained appellant's intent in possessing the eleven bags, something the jury naturally would have inquired about since that was a central element of the crime charged. So the admissibility of the sales as *Toliver* evidence does not exclude their relevance under *Drew.* Evidence that "explains the immediate circumstances surrounding," is "intimately entangled with," or "completes the story of" the crime charged—all formulations of the *Toliver* principle—may be just as telling on issues like identity and intent, to which *Drew* analysis looks, as it is to explain why the officers approached a defendant and arrested him

(*i.e.,* to rebut a claim of harassment or unjustified accosting).

Yet, even when *Toliver* evidence is not strictly "intrinsic" to the charged crime because it also points to other criminal activity, we admit it without the standard *Drew* safeguards provided that, like any other relevant evidence, it is more probative than prejudicial. And the reason we do so is a judgment that it *is,* presumptively, more probative than prejudicial. By requiring that the act both "aris[es] out of the same transaction or series of transactions as the charged offense," *Toliver,* 468 A.2d at 960 (citations omitted), and takes place in close temporal and spatial proximity to the charged act, *see ante* at 1047 n. 4, we ensure a very high degree of relevance of the evidence as proof of the crime charged. At the same time, that proximity affords strong protection against the danger underlying *Drew'*s limitations, which is that the jury will withdraw attention from the act charged and its attendant circumstances and convict for broader reasons of character or propensity shown by repeated criminal behavior.