**Shanti A. SCOTT, Appellant**

v.

**UNITED STATES, Appellee.**

**No. 04–CF–527.**

District of Columbia Court of Appeals.

Argued Nov. 10, 2005.

Decided Aug. 21, 2008.

---

45. *Id.*

James W. Kraus, appointed by the court, for appellant.

Alessio D. Evangelista, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Roy W. McLeese, III, Elizabeth Trosman, John K. Han, and Sharon A. Sprague, Assistant United States Attorneys, were on the brief and supplemental brief, for appellee.

Before RUIZ, Associate Judge, and BELSON and TERRY, Senior Judges.*

TERRY, Senior Judge:

After a jury trial, appellant was convicted of aggravated assault while armed (AAWA) and five related firearms offenses.[1] On appeal, he contends that the trial court abused its discretion when it allowed the government to introduce evidence of suspected marijuana that was found on his person and in the console of the car he was driving at the time of his arrest, even though he was not charged with possession of marijuana. Second, he challenges the trial court's ruling that allowed the government to cross-examine a defense witness about that witness' pending criminal case and detention status. Third, appellant contends that the trial court committed reversible error in instructing the jury on the definition of "serious bodily injury," an element of ag-

---

\* Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. The jury also found appellant guilty of assault with a dangerous weapon, with which he was charged in the third count of the seven-count indictment. The court, however, did not impose sentence on that count.

gravated assault while armed. Finally, appellant asserts that there was insufficient evidence to convict him on all counts. Although we do find error in two respects, we conclude that one of these errors was harmless and that the other can be remedied by reversing the convictions on two counts and remanding the case for partial resentencing. In all other respects we affirm the judgment of conviction.

I

On September 4, 2003, at approximately 3:00 p.m., Officer Mark Harrison of the Metropolitan Police was on duty in the 600 block of Atlantic Street, S.E., when he heard a gunshot. He went to investigate and found Reginald Bailey in a nearby alley, limping and in extreme pain, with blood coming from his boot. Mr. Bailey told Officer Harrison that a man named "Little Tony" shot him and then drove away in a black Honda with tinted windows. Officer Harrison also heard Mr. Bailey tell his brother, who arrived a few minutes later, that Little Tony shot him.[2] Eight days later, Mr. Bailey identified appellant as the person who shot him from an array of photographs shown to him by another member of the Metropolitan Police, Detective Philip Moore.[3]

Several weeks after the shooting, Mr. Bailey saw appellant driving the same black Honda, wrote down its license number, and notified Detective Moore. On October 21, a few days later, while on patrol in a police cruiser with two other officers, Officer Lance Andriani saw appellant driving the black Honda. He and his fellow officers stopped the car because they knew there was an outstanding arrest warrant for appellant. When they searched the Honda, the officers found a loaded .40 caliber Smith & Wesson pistol in the covered center console beside the driver's seat. In the console, next to the gun, were sixty-one small plastic ziplock bags containing a green weed substance. Four additional plastic bags containing a green weed substance, similar in size and color, were recovered from appellant's pocket. A police department firearms expert, Jonathan Pope, compared the bullet taken from Mr. Bailey's foot with the gun recovered from the car and determined that the bullet was fired from that gun.

Appellant presented one witness in his defense, William Murdock. Mr. Murdock testified that he was a friend of appellant. On the day of the shooting, he said, he was standing right next to appellant, about fifty feet away from Mr. Bailey, when Bailey was shot. He stated that appellant did not shoot Mr. Bailey, but he did not see who did. On cross-examination, Mr. Murdock admitted that he had been incarcerated for almost two weeks in a pending criminal case in federal court. He also revealed that he was not on good terms with Mr. Bailey and had talked with appellant virtu-

---

**2.** Mr. Bailey testified that he was on his way home from an errand when he ran into appellant, whom he had known since childhood. The two of them got into an argument, in the course of which appellant struck Mr. Bailey on the chin. Bailey swung back at him, but missed. Appellant then stepped back a few feet, pulled out a gun, and shot Bailey in the leg. Mr. Bailey's bloody boots were admitted into evidence, along with a photograph of his injured leg and foot.

**3.** Mr. Bailey, who had graduated from a special high school for "slow learners," testified that he took several medications on the day of the shooting which had been prescribed for his problems with mood swings and depression; these medications included Prozac, Zoloft, and Deprocote, as well as lithium. He also testified that he smoked two blunts of marijuana on the morning of September 4, but he said that the effect of the marijuana had worn off by the time of the shooting (approximately 3:00 p.m.), and thus it had no effect on his recollection of what happened.

ally every day since the date of the shooting.

## II

██ Appellant contends that the trial court erred when it admitted evidence about the ziplock bags of suspected marijuana which the police recovered from his person and from the black Honda's console, next to the gun, more than six weeks after the shooting of Mr. Bailey.[4] He argues that this evidence was more prejudicial than probative because it could only portray him to the jury as a drug dealer. Moreover, he contends, the suspected drugs were not admissible because there was no evidence to connect the drugs to the shooting. The government maintains in response that it had to introduce the ziplock bags that were found on appellant's person and in the console of the black Honda, along with the gun, in order to prove that appellant was in constructive possession of the gun several weeks after the shooting. We find the government's argument more persuasive.

██ "A decision on the admissibility of evidence ... is committed to the sound discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion." *Smith v. United States,* 665 A.2d 962, 967 (D.C.1995) (citations omitted). "Ordinarily, any evidence which is logically probative of some fact in issue is admissible ... unless it conflicts with some settled exclusionary rule." *Martin v. United States,* 606 A.2d 120, 128 (D.C. 1991) (citations omitted). One such rule concerns evidence of other crimes, which is generally inadmissible to prove that the defendant committed the crime or crimes

for which he is on trial. *Drew v. United States,* 118 U.S.App. D.C. 11, 15, 331 F.2d 85, 89 (1964). However, "in cases where evidence of incidental, uncharged criminal conduct is inextricably intertwined with evidence of the charged offense, evidence of the uncharged criminal conduct is directly admissible without the necessity of a cautionary *Drew* instruction." *Toliver v. United States,* 468 A.2d 958, 961 (D.C. 1983). For evidence to be properly admitted under *Toliver,* it must be "relevant to explain the immediate circumstances surrounding the offense charged." *Id.* at 960.[5]

In *Johnson v. United States,* 683 A.2d 1087, 1101 (D.C.1996) (en banc), *cert. denied,* 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997), this court upheld the trial court's admission of expert testimony which showed that a gun with which the defendant shot the victim in the District of Columbia was the same gun that was used shortly thereafter to kill two children in the victim's apartment in nearby Maryland. We noted that other crimes evidence was admissible not only when it qualified for an exception under *Drew,* but also when it was relevant and, as in *Toliver,* constituted "direct proof of the crime charged." *Id.* at 1101. Under the latter theory, the evidence may still "be excluded if its probative value is substantially outweighed by the danger of [the] unfair prejudice it poses." *Id.* We concluded, however, that the trial court had not abused its discretion when it ruled that the danger of unfair prejudice did not outweigh the probative value of the ballistics evidence. We held accordingly that the ballistics evidence was properly admitted, even though the jury was thereby made aware of the

---

4. All of the plastic bags were admitted into evidence, along with the gun and a photograph of the gun lying next to the plastic bags.

5. For a discussion of the difference between *Drew* and *Toliver, see Bell v. United States,* 677 A.2d 1044, 1047 (D.C.1996); *see also id.* at 1049 (Farrell, J., concurring).

brutal killing of two innocent children. *Id.* at 1095.

In the instant case, *Drew* is not applicable because the evidence of the ziplocks containing material appearing to be marijuana does not fall under the prohibitions of *Drew.*[6] "Specifically, *Drew* does not apply where such evidence (1) is direct and substantial proof of the charged crime, (2) is closely intertwined with the evidence of the charged crime, or (3) is necessary to place the charged crime in an understandable context." *Johnson,* 683 A.2d at 1098. The ziplock bags directly connected appellant to the gun that was found in the console of the car he was driving at the time of his arrest.[7] That gun was later linked to the shooting of Mr. Bailey through ballistics evidence which confirmed that the bullet taken from Mr. Bailey's foot was fired from the gun found in the console of the car.[8] Thus we conclude that the trial court committed no error in its reliance on *Johnson* and its determination that the degree of prejudice that appellant might face if the jury concluded that he also possessed drugs was minimal,[9]

especially when compared with the potential prejudice suffered by the defendant in *Johnson* after the government was allowed to introduce evidence that he had killed two children. Accordingly, we hold that the court did not abuse its discretion in allowing the admission of testimony about the ziplock bags containing material believed to be marijuana.

III

■■■ Appellant contends that the trial court abused its discretion when it permitted the government to cross-examine a defense witness, William Murdock, about his pending criminal case in federal court and his current detention on those federal charges. The government maintains that this brief questioning[10] was warranted to show that Mr. Murdock was biased against the government because of his pre-trial detention status in another matter unrelated to this case. We hold that the trial court erred by allowing this line of questioning, but that the error was harmless.

---

6. Even if we were to assume *arguendo* that *Drew* was applicable to this case, the evidence would still have been admissible to prove identity. *See Drew,* 118 U.S.App.D.C. at 16, 331 F.2d at 90 ("Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan ... and (5) the identity of the person charged with the commission of the crime on trial"). The discovery of the ziplock bags in the console served to identify appellant as Mr. Bailey's assailant because they connected appellant to the gun that was used in the shooting.

7. As the government points out in its brief, Officer Andriani testified that the ziplock bags seized from appellant's pocket "were identical" to the ziplock bags recovered from the console next to the gun.

8. This car also matched Mr. Bailey's description of the car that appellant was driving on the day of the shooting.

9. The government's need to connect the gun to appellant through the ziplock bags became all the more important when the analysis of a fingerprint recovered from the gun established that it was not appellant's fingerprint.

10. The relevant cross-examination was as follows:

 Q. Mr. Murdock, you have a pending case in United States Federal District Court, don't you?
 A. Yes.
 Q. And you have been held, incarcerated, since January 30th pending trial in that case; isn't that right?
 A. Yeah.
Immediately following this exchange, the trial court instructed the jury to limit its consideration of this testimony to a determination of whether Mr. Murdock was biased.

■ In *Williams v. United States*, 642 A.2d 1317 (D.C.1994), we held that, as a general rule, it is not "plausible"

> to assume categorically that a witness awaiting criminal trial on charges unrelated to the present case is fired by anti-government hostility. In general, the probative force of that inference is too slight to risk injecting the witness's (and associatively the defendant's) character into the criminal trial through reference to his arrest or pending charges.

*Id.* at 1322 (footnote omitted). We reaffirm here what we said in *Williams*, and emphatically reiterate that a defense witness does not have "a motive to 'get even'" with the government simply because he stands accused in another unrelated criminal case. The government must present "additional circumstances" to support such a claim of bias, *id.* at 1322, and in this case there was no showing of "additional circumstances."

The government relies on *Ebron v. United States*, 838 A.2d 1140 (D.C.2003), *cert. denied*, 543 U.S. 939, 125 S.Ct. 347, 160 L.Ed.2d 247 (2004), and *Littlejohn v. United States*, 705 A.2d 1077 (D.C.1997), to support its assertion that the prosecutor was justified in questioning Mr. Murdock about his bias or motivation for testifying on appellant's behalf. In *Ebron* a footnote at the end of the opinion states in part: "We find no basis for reversal because the trial court allowed the government … [to cross-examine a defense witness about a] pending murder charge [against him] in an effort to show his bias against the government." 838 A.2d at 1156 n. 14. This statement should not be read as approving such cross-examination. Simply saying that we "find no basis for reversal" in the prosecutor's questions is a far cry from endorsing such a line of questioning. In this case— as in *Ebron*—it would have been better if the questions had not been asked, but—

again as in *Ebron*—we are not convinced that the challenged cross-examination had any significant effect on the outcome of the trial.

As for *Littlejohn*, it can be distinguished from both *Williams* and the instant case because it holds that a defendant does not have an absolute right, under the Sixth Amendment, to call a witness in his defense if his exercise of that right would cause the potential witness to forego his Fifth Amendment right against self-incrimination. 705 A.2d at 1082. The defense witness' Fifth Amendment right would also shield him from cross-examination by the government about potential bias if such questioning would expose him to criminal liability. *Id.* at 1085. Noting that "[t]he scope and extent of cross-examination … are committed to the trial court's sound discretion," we held that the witness was required to take the witness stand and invoke his privilege against self-incrimination "one question at a time" and should be excused from testifying "only if absolutely necessary." *Id.*

> If the government would have a reasonable opportunity to cross-examine [the witness] with questions not posing a threat of self-incrimination, the trial judge had the authority, and even the duty, to restrict that cross-examination to accommodate [the defendant's] Sixth Amendment rights as well.

*Id.* (citation omitted). The holding of *Littlejohn* is not applicable to the facts of this case, since Mr. Murdock was not precluded from testifying on behalf of appellant, and he did not raise any issues about self-incrimination during his testimony.

Like the witness in *Williams*, Mr. Murdock "had no more to gain by testifying untruthfully than any other defense witness wanting to keep a friend out of jail." 642 A.2d at 1323. The government did not offer any additional evidence to sustain its

claim of bias. Thus we hold that the trial court erred by allowing this form of impeachment of Mr. Murdock.

We are not convinced, however, that this error warrants reversal. *See Williams*, 642 A.2d at 1323 (citing *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). For three reasons we conclude that the error was harmless. First, it was already apparent to the jury that Mr. Murdock was incarcerated, since he testified wearing prison attire, namely, an orange jump suit. Second, the jury already knew that Mr. Murdock was somewhat biased against Mr. Bailey, since he admitted during his testimony both that he was a friend of appellant and that he and Bailey were not "on good terms." Finally, the government's case was a strong one, in that appellant, more than six weeks after Mr. Bailey was shot, was found in possession of the very gun used in the shooting. In these circumstances we are satisfied that the government's brief questioning of Mr. Murdock about his pending federal case did not improperly affect the jury's verdict, and that the court's error in allowing the questions does not require reversal.

## IV

While this opinion was being written, appellant's attorney informed this court that he had managed to obtain a copy of a transcript, previously thought to be unavailable, which includes the trial court's response to a note that the jury sent to the court after it had begun its deliberations. The note concerned the definition of "serious bodily injury," an element of the crime of aggravated assault while armed (AAWA). The jury wanted the court to clarify whether the phrase "substantial risk of" in the instruction's definition of serious bodily injury applied only to the word "death" or to all of the subsequently listed physical conditions. After some discussion, and over defense objection, the court instructed the jury that "substantial risk of" applied to each of the physical conditions listed in the instruction:

Well, "substantial risk of," that is a modifier of all of them, not just death. So it would be as if you had "substantial risk of" in front of each of those items separated by the comma.

This court granted appellant's motion to supplement the record and invited supplemental briefing on the issue raised by the newly discovered transcript whether the trial court, in its reinstruction to the jury, erred in defining the term "serious bodily injury" as it related to the AAWA charge. Appellant now contends that "the trial court's instruction with respect to serious bodily injury ... was an impermissible broadening of the definition of serious bodily injury," and that this error was so prejudicial as to require reversal of the AAWA conviction. The government concedes in its supplemental brief that the trial court's reinstruction was erroneous, but argues that any error was harmless.

■■■ When an appellant challenges an instruction given by the trial court, our review is for abuse of discretion. *E.g., Broadie v. United States*, 925 A.2d 605, 621 (D.C.2007). In determining whether a particular instruction was appropriate, this court analyzes " 'each case on its own facts and circumstances.' " *Id.* (citation omitted). The "central question" for this court in its review of a challenged jury instruction is whether the instruction "is an adequate statement of the law, and whether it is supported by evidence in the case." *Wheeler v. United States*, 930 A.2d 232, 238 (D.C.2007). Our task is thus to determine whether the reinstruction given here by the trial court correctly stated the law regarding the serious bodily injury element of aggravated assault.

■ To secure a conviction for aggravated assault, either armed or unarmed, the government must establish that the defendant caused "serious bodily injury." *See* D.C.Code § 22–404.01 (2001). We have defined serious bodily injury as an injury that "involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Nixon v. United States,* 730 A.2d 145, 149–150 (D.C.), *cert. denied,* 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999).

■ Our case law since *Nixon* makes clear that a "'high threshold of injury' [is] required to prove aggravated assault...." *Jackson v. United States,* 940 A.2d 981, 986 (D.C.2008) (citation omitted). Thus, for example, "injuries such as knife or gunshot wounds are not *per se* 'serious bodily injury.'" *Zeledon v. United States,* 770 A.2d 972, 977 (D.C.2001). When we have held that a defendant caused serious bodily injury sufficient to affirm an aggravated assault conviction, the victim has usually sustained life-threatening or disabling injuries involving "grievous stab wounds, severe burnings, or broken bones, lacerations and actual or threatened loss of consciousness." *Swinton v. United States,* 902 A.2d 772, 775 (D.C.2006). Aggravated assault victims "typically required urgent and continuing medical treatment (and, often, surgery), carried visible and long-lasting (if not permanent) scars, and suffered other consequential damage, such as significant impairment of their faculties." *Id.* Cases of aggravated assault are "[i]n short ... horrific." *Id.*

■ The instruction given by the trial court in this case would have permitted the jury to find serious bodily injury if it determined that the victim sustained an injury involving not just a substantial risk of death, but a substantial risk of (1) unconsciousness, (2) extreme physical pain, (3) disfigurement, or (4) "protracted loss or impairment of the function of a bodily member, organ or mental faculty." *Nixon,* 730 A.2d at 150. This instruction, however, is inconsistent with the case law's "strict construction of the 'serious bodily injury' requirement in the aggravated assault statute." *Jackson,* 940 A.2d at 986. It would allow the jury to find the defendant guilty of aggravated assault based on evidence that he caused an injury less severe than the life-threatening and disabling injuries suffered by victims in cases in which we have affirmed aggravated assault convictions. Such an instruction contradicts "what the legislature intended in fashioning a crime that increases twentyfold the maximum prison term for a simple assault." *Zeledon,* 770 A.2d at 977.

In formulating the reinstruction, the trial court relied on *Gathy v. United States,* 754 A.2d 912, 919 (D.C.2000), in which we held that the government introduced sufficient evidence to enable the jury to find beyond a reasonable doubt that the victim suffered "serious bodily injuries involving a substantial risk of unconsciousness, extreme physical pain, or protracted and obvious disfigurement." But the issue presented here was not raised in *Gathy,* and thus we had no occasion to examine the syntax of the definition that we first adopted in *Nixon.* The case at bar requires us to scrutinize that definition more closely than in any other case thus far; and having done so, we readily conclude that the "substantial risk" of which *Nixon* speaks is only a substantial risk of death, not a substantial risk of extreme pain, disfigurement, or any of the other conditions listed. The trial court's instruction here, expanding the definition of serious bodily injury, was not an accurate statement of the law and was thus erroneous.

██ "To find an instructional error harmless, we must be satisfied 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Higgenbottom v. United States,* 923 A.2d 891, 899 (D.C.2007) (quoting *Kotteakos,* 328 U.S. at 765, 66 S.Ct. 1239); *see Jenkins v. United States,* 877 A.2d 1062, 1069–1070 (D.C.2005) (reviewing, under *Kotteakos* standard, assertion that error in instruction that impermissibly broadened definition of serious bodily injury was harmless). The government contends that the instructional error in this case was harmless because "the evidence was such that the jury would necessarily have found serious bodily injury if properly instructed." In particular, the government asserts that as a result of being shot in the foot, Mr. Bailey experienced such extreme physical pain that the jury would almost certainly find serious bodily injury even if it had been instructed correctly. The government relies on cases stating that a jury, in reaching its verdict, "may infer from a description of the nature and extent of injuries that an individual has suffered 'serious bodily injury' as defined." *Earl v. United States,* 932 A.2d 1122, 1131 (D.C. 2007) (citation omitted). *See also Swinton,* 902 A.2d at 777 ("even absent graphic descriptions of suffering from the victim herself or other witnesses, a reasonable juror may be able to infer that pain was extreme from the nature of the injuries and the victim's reaction to them").

For example, in *Hart v. United States,* 863 A.2d 866, 875 (D.C.2004), we held that a reasonable juror could infer that the victim experienced extreme physical pain after she sustained multiple stab wounds that required seventy-two stitches and a four-day stay in the hospital, when the victim also testified that the stab wounds caused her "a great deal of ongoing pain."

Likewise, in *Riddick v. United States,* 806 A.2d 631, 641 (D.C.2002), we held that the jury could reasonably conclude that the victim experienced extreme pain when the evidence included (1) testimony from the victim that she "moaned in pain, cried, and screamed for help during and immediately after the assault," (2) testimony from a police officer that the victim was bleeding profusely and was covered in blood after the attack, (3) testimony from a detective that paramedics informed him that they thought the victim's severe blood loss would be fatal, and (4) medical records indicating that the victim sustained a neck wound requiring emergency surgery. In another recent case, testimony by a stabbing victim that after an attack he could not breathe, was afraid of dying, and experienced muscle and chest pain, combined with medical records indicating that he was prescribed pain medication and complained of chest pain, was held to be sufficient to permit a reasonable inference that the victim experienced extreme physical pain. *Bolanos v. United States,* 938 A.2d 672, 682 (D.C.2007).

In the instant case, the evidence established that Mr. Bailey was hospitalized for four days following the shooting and that doctors performed surgery to remove a bullet from his foot. After being discharged from the hospital, Mr. Bailey spent a month in a wheelchair. He testified that being shot caused him to experience the worst pain he had ever known. Officer Harrison testified that he saw Bailey limping after the shooting, and that he noticed blood leaking from Bailey's shoe. Harrison also said that Mr. Bailey vomited from the trauma and that, from his own observations, he believed that Mr. Bailey was experiencing excruciating physical pain. This evidence, standing alone, might well support the verdict of a properly instructed jury that the victim suffered seri-

ous bodily injury, as we held in *Hart, Riddick,* and *Bolanos,* but that does not mean the jury was compelled so to find.

Moreover, the evidence does not stand alone. There is one additional factor in this case which persuades us that the error was not harmless, and that is the speed with which the jury returned its guilty verdict after receiving the erroneous instruction. The supplemental transcript reveals that the jury, after being reinstructed, left the courtroom at 11:37 a.m. for further deliberations. At 11:55, only eighteen minutes later, the case was recalled, and the court informed counsel that the jury had sent another note reporting that "they have a verdict." A couple of minutes after that, the jury returned to the courtroom, and the foreman announced a verdict of guilty on all seven counts of the indictment. Given this sequence of events—in particular, the very brief passage of time between the erroneous instruction and the verdict—we can only conclude that the instructional error, in the words of *Kotteakos,* "substantially swayed" the jury's verdict on the AAWA charge (count one). Stated another way, we cannot say "with fair assurance," *Kotteakos,* 328 U.S. at 765, 66 S.Ct. 1239, that the verdict was not prejudicially affected by the error. The AAWA conviction must therefore be reversed. In addition, the conviction of possession of a firearm during a crime of violence (PFCV) (count two), which was predicated on the AAWA conviction and dependent on its validity, must also be set aside.

 It is important to note, however, that the erroneous instruction affected only two counts of a seven-count indictment. In particular, it did not affect the jury's verdict on count three, which charged appellant with the crime of assault with a dangerous weapon (ADW). As we noted earlier, *supra* note 1, the jury found appellant guilty of ADW, but the trial court suspended imposition of sentence on that count. The trial court's reason for doing so is not entirely clear from the record because the transcript is garbled,[11] but a few pages earlier in the transcript the court declared its understanding that ADW is a lesser included offense of aggravated assault while armed, as we expressly held in *Gathy,* 754 A.2d at 919. Since simultaneous convictions of both the greater and the lesser included offenses would not be permissible, the court acted properly in not sentencing appellant on the lesser ADW count. Now, however, given our holding that the AAWA conviction must be reversed, it would be entirely permissible for the court on remand to impose an appropriate sentence for ADW. We therefore direct the court on remand to do so.[12] This is the same course we followed not only in *Gathy, id.* at 920, but also in other cases in which the conviction of the greater offense had to be reversed, but the reversal did not affect the lesser included offense. *See, e.g., Zellers v. United States,* 682 A.2d 1118, 1125 (D.C.1996) (reversing conviction of first-degree theft because evidence of value was insufficient, and directing trial court "to enter a judgment of conviction of second-degree theft," which

---

11. The sentencing transcript was prepared from a tape recording, not by a live court reporter from stenographic notes, and for that reason there are several passages in the transcript marked "indiscernible." One of those passages contains the court's explanation of why it was not imposing sentence on the ADW count.

12. In its supplemental brief, the government has agreed that, if we conclude (as we have) that the instructional error was not harmless, it would not seek "to retry appellant on the AAWA charge and [would] instead ... accept entry of judgment on the lesser included offense of ADW."

did not require specific proof of value); *Jennings v. United States,* 431 A.2d 552, 555 (D.C.1981) (reversing conviction of first-degree burglary for failure to prove an essential element, and remanding with instruction to enter judgment of conviction of second-degree burglary); *accord, e.g., Hemphill v. United States,* 131 U.S.App. D.C. 46, 50, 402 F.2d 187, 191 (1968) (reversing conviction of first-degree murder for failure to prove premeditation, and remanding to "permit[ ] sentencing for second-degree murder without a new trial").

V

Finally, appellant contends that there was insufficient evidence from which a jury could conclude that he was guilty. Appellant points out that this was essentially a two-witness case, based mainly on the testimony of the victim, Mr. Bailey, and that of the defense witness, Mr. Murdock. Appellant asserts that Mr. Bailey, the victim, was not a credible and reliable witness because he was a "slow learner," was taking prescription medications for his mental health conditions, and had smoked two blunts of marijuana on the morning of the shooting. For these reasons, he maintains, Mr. Murdock was necessarily the more credible witness, and the case should never have gone to the jury.

 This court "reviews the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987). "A court must deem proof of guilt sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ri-*

*vas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Moreover, the government's evidence need not negate every possible inference of innocence. *See, e.g., Timberlake v. United States,* 758 A.2d 978, 980 (D.C.2000).

 "Contradictions among witnesses at trial are inevitable and are matters for the jury to resolve as they weigh all the evidence." *Payne v. United States,* 516 A.2d 484, 485 (D.C.1986). Mr. Bailey testified that he had known appellant since childhood. Eight days after the shooting, Detective Moore showed Mr. Bailey an array of photographs, and Mr. Bailey identified appellant as his assailant. Officer Harrison stated that he discovered Mr. Bailey soon after the shooting and overheard Mr. Bailey speaking to his brother when he identified appellant by a nickname ("Little Tony") and described the black Honda that appellant was driving. In addition, Officer Andriani testified that he recovered a gun from the center console of a black Honda driven by appellant several weeks after the shooting. This gun was later confirmed by a firearms expert to be the gun that fired the bullet which was recovered from Mr. Bailey's foot. Despite the contradictions between Mr. Bailey's and Mr. Murdock's testimony regarding the identity of the shooter, we hold that there was ample evidence to support the jury's finding of guilt on all the counts in the indictment. We therefore reject appellant's claim of insufficiency.

VI

For the reasons set forth in part IV of this opinion, appellant's convictions of aggravated assault while armed (count one of the indictment) and possession of a firearm

during a crime of violence (count two) are reversed. The case is remanded to the trial court with directions to impose an appropriate sentence for assault with a dangerous weapon (ADW) as charged in count three, of which the jury found appellant guilty.[13] Since appellant has already served almost all of the prison time for which he was sentenced on the five firearms offenses, we direct the court to complete the resentencing within forty-five days from the date of this opinion. The judgment of conviction is affirmed in all other respects.

*Affirmed in part, reversed in part, and remanded for partial resentencing.*[14]

---

13. We take no position, of course, on what might be an appropriate sentence for ADW.

14. Appellant has filed in this court a motion for release pending appeal. In light of our direction to the trial court to resentence appellant within forty-five days, we deny the motion.