Michael R. TIMMS, Appellant

v.

UNITED STATES, Appellee.

No. 07–CF–402.

District of Columbia Court of Appeals.

Submitted Jan. 11, 2011.
Decided July 14, 2011.

---

Judith A. Lovelace, appointed by the court, was on the brief for appellant.

Ronald C. Machen, Jr., United States Attorney, and Elizabeth Trosman, John P. Mannarino, Samuel R. Ramer, and Michael J. Friedman, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and THOMPSON, Associate Judges, and TERRY, Senior Judge.

TERRY, Senior Judge:

Appellant was convicted of assault with intent to kill while armed (AWIKWA), aggravated assault while armed (AAWA), and several related weapons offenses: carrying a pistol without a license (CPWL), possession of an unregistered firearm (UF), possession of unregistered ammunition (UA), and two counts of possession of a firearm during a crime of violence (PFCV). On appeal from the judgment of conviction, appellant claims that the trial court infringed his Sixth Amendment right of confrontation (1) by precluding additional cross-examination of a witness about certain alleged inconsistent statements, and (2) by admitting certificates of no record (CNRs) into evidence without testimony from their author or authors. Appellant also contends that the court committed plain error in its jury instructions (3) when it included a potentially confusing definition of the statutory term "serious bodily injury" and (4) when it gave a so-called "attitude and conduct" instruction. Appellant further argues, and the government does not dispute, (5) that his two PFCV convictions merge into one. We agree that the CNRs were improperly admitted into evidence, and we agree that the two PFCV convictions should merge, but we find his other contentions unpersuasive. We therefore reverse the three convictions (CPWL, UF, UA) that are affected by the erroneous admission of the CNRs, and we remand the case with directions to vacate one of appellant's PFCV convictions. The remaining PFCV conviction, along with the AWIKWA and AAWA convictions, must be affirmed.

I

Appellant's convictions all arise from the shooting of Lorenzo Williams. Appellant and Mr. Williams had been engaged in an ongoing dispute and had physically fought with each other just a few days before the shooting. The reason for their quarrel, however, was unclear.

On the evening of September 25, 2005, appellant went to Mr. Williams' home and invited him outside to discuss a truce in their dispute. After appellant lifted up his shirt to reveal that he was unarmed, Mr. Williams agreed to join him outside. Mr. Williams was accompanied by his cousin, Jaquan Taylor.

As they stood in front of Mr. Williams' house, the two men exchanged words, and Mr. Williams began to walk away, only to hear appellant utter an expletive. Before Mr. Williams could turn all the way around to face appellant, he was shot. Mr. Williams testified that even after he fell to the ground, appellant stood over him and continued to fire his gun toward him.

Mr. Williams' fiancée, Luciette Johnson, and Mr. Taylor both witnessed the shoot-

ing and described in similar terms how appellant fired what turned out to be twelve bullets into Mr. Williams' body. Dr. Jack Sava, who treated Mr. Williams for his injuries at the Washington Hospital Center, testified that the bullets pierced Mr. Williams' liver and kidney, fractured his spine, and broke his arm. Mr. Williams stated that even on the date of trial he continued to feel pain in his back, legs, feet, and arm.

Mr. Williams testified on direct examination that no one else was nearby throughout his verbal exchange with appellant, except for Mr. Taylor, but that there were other people "across the street by the alley." Following cross-examination, the trial court posed the following question to Mr. Williams in response to a juror's inquiry: "When you turned around to leave . . . was there anyone else immediately in front of you?" Mr. Williams answered, "No."

At a bench conference that immediately followed, defense counsel sought the court's permission to conduct follow-up questioning, asserting that Mr. Williams' negative response was inconsistent with his grand jury testimony. Before the grand jury, Mr. Williams had stated, "When I was turned around is when somebody, one of his . . . buddies was, like, walking, was kind of close to him [appellant]. But I think they was walking from over there, from over on the other side of the street." Mr. Williams also told the grand jury, "I don't know if he had the gun

on him or, as I was walking away, the dude came over and passed [it to] him. I don't really know." The court denied defense counsel's request for leave to ask additional questions, concluding that Williams' grand jury testimony was not inconsistent with his trial testimony and that defense counsel should have explored this issue during his earlier cross-examination.[1]

The next morning, the prosecutor informed the trial court of his intention to offer two CNRs into evidence. Defense counsel objected, arguing that the probative value of the CNRs was substantially outweighed by their prejudicial effect. This objection was overruled, and the proceedings continued with the testimony of the government's two final witnesses, Jaquan Taylor and Dr. Sava. Thereafter the CNRs were read into evidence, and the government rested.

With the jury out of the room, defense counsel again objected to the admission of the CNRs, stating: "We would respectfully suggest, Your Honor, that the—and this is an objection that I think is perhaps a first impression—but that the reading, the introduction of the certificates which were read [into evidence by the prosecutor] . . . are a violation of my client's right to confront the—." The court interrupted, apparently believing that counsel was raising the same argument he had made earlier regarding the prejudicial effect of the CNRs.[2] Nevertheless, counsel continued,

---

1. Ms. Johnson later testified that two other unidentified persons walked past appellant during the encounter, but that they were "walking away up the hill" as Mr. Williams turned around. The court then asked Ms. Johnson whether she saw "anybody do anything other than talk," after a juror had submitted a written question about whether she had "notice[d] anyone make a passing motion or [whether] the two individuals [were] close enough to exchange anything." Ms. Johnson answered the court's question, "No." Defense

counsel objected to the court's rephrasing of the question, arguing that the juror's inquiry should have been posed to Ms. Johnson verbatim, but the court overruled the objection.

2. We discern no error in this interruption, since the court did not deprive defense counsel of any opportunity to clarify his argument. *See Melendez v. United States,* 10 A.3d 147, 153–154 (D.C.2010) ("we do not perceive that the trial judge was proceeding so abruptly that he would have refused to listen to a

restating his contention as an oral motion for judgment of acquittal:

> [W]ell, for motion of judgment of acquittal, what we say about the possessory offenses is that the Government hasn't proved its case because it hasn't given the—there is no evidence which the Government—which [appellant] could confront concerning the possession of—the unlicensed gun and the other—the possession of a firearm—of ammunition [without a registration] certificate.
>
> He didn't—was unable to confront those particular—the authors and procedures and to verify and confront in short the certificates.
>
> So we would just ... say the Government has therefore failed to meet its—because it has not brought in those individuals who could substantiate and go through the way this procedure is done, the Government hasn't met its burden of proof beyond taking the—all the evidence into account in wide.

The government opposed this motion "in all respects," interpreting defense counsel's contentions to be a continuing challenge to the sufficiency of the evidence. The court agreed with the government and denied the motion.

The court later instructed the jury, *inter alia*, that "serious bodily injury is an injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." The court also gave a so-called "attitude and conduct" instruction, stating, "The final test of the quality of your service will lie in the verdict ... and not in the opinions that any of you may hold before agreement to a verdict."

forthright, concrete [objection], coupled with

## II

Appellant argues that the trial court violated his Sixth Amendment right of confrontation by precluding him from asking Mr. Williams additional questions about the presence of third parties. The principles governing such a claim are well established. "A defendant's rights under the Confrontation Clause include the opportunity to cross-examine the witnesses who testify against him." *Porter v. United States*, 7 A.3d 1021, 1026 (D.C.2010) (citing *Davis v. Alaska*, 415 U.S. 308, 315–316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Nevertheless, that Sixth Amendment right is violated only when a trial court precludes any "meaningful" degree of cross-examination, *Flores v. United States*, 698 A.2d 474, 479 (D.C.1997) (citation omitted), and thus the defendant's right to cross-examine is "subject to reasonable limits imposed at the discretion of the trial judge." *Scull v. United States*, 564 A.2d 1161, 1164 (D.C. 1989); *accord, e.g., Adams v. United States*, 883 A.2d 76, 81–82 (D.C.2005).

In this case we are satisfied that defense counsel had a meaningful—and therefore constitutionally sufficient—opportunity to confront Mr. Williams about the location of any unidentified individuals during the shooting. On direct examination, the government expressly inquired about the proximity of third parties, and Mr. Williams replied that no one other than himself, appellant, and Mr. Taylor were in the vicinity immediately before the shots were fired. Regardless of whether Mr. Williams' grand jury testimony was consistent or inconsistent with this response, defense counsel was free during his initial cross-examination to ask whether any third parties approached as Mr. Williams walked away, but counsel did not do so. Accordingly, because counsel had an op-

a summary argument").

portunity to cross-examine Mr. Williams but failed to avail himself of that opportunity, appellant's Sixth Amendment right of confrontation was not violated. *See Davis*, 415 U.S. at 315–316, 94 S.Ct. 1105.

■ But even if we were to assume, for the sake of argument, that the trial court erred in disallowing any follow-up questioning, we would still find no reason to reverse the judgment. "[R]eversal will only be required if we conclude, upon consideration of the totality of the circumstances, that the error caused significant prejudice." *Flores*, 698 A.2d at 479 (citation omitted). Such prejudice cannot be established in this case, given the extensive evidence of appellant's guilt, including the testimony of three eyewitnesses who saw appellant standing over Mr. Williams while repeatedly firing the pistol at him as he lay on the ground. Indeed, even if permitted, cross-examination about Mr. Williams' grand jury testimony would have had little exculpatory value, since it would only have supported an inference that a third person handed appellant the gun and walked away. Independently of any such potential inference, there was abundant evidence—including Mr. Williams' own testimony—that it was appellant, not a third person, who actually fired twelve bullets into Mr. Williams' body. In any event, Ms. Johnson testified that the two unidentified individuals to whom she referred were not in the vicinity during the shoot-

ing and did not do anything other than talk.[3]

### III

■ Appellant contends that the trial court also violated the Confrontation Clause by admitting the two CNRs into evidence without giving him an opportunity to confront their author or authors. In *Tabaka v. District of Columbia*, 976 A.2d 173, 175–176 (D.C.2009), this court held, following *Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), that a CNR is "testimonial," and that a criminal defendant therefore has the right to cross-examine its author. *See generally Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Thus we agree with appellant that the admission of the CNRs into evidence was error and requires reversal of three of appellant's firearm convictions. *See Tabaka*, 976 A.2d at 176.[4]

■ In determining whether a claim has been preserved, we recognize "the conventional requirement that a defendant take his objection at the earliest possible opportunity when, by doing so, he can enable the trial judge to take the most efficacious action...." *Hunter v. United States*, 606 A.2d 139, 145 (D.C.1992) (citation and internal quotation marks omitted);

3. We find no error in the trial court's rephrasing of the juror's inquiry, see *supra* note 1, which restated the question in a much less leading fashion. *See Yeager v. Greene*, 502 A.2d 980, 985–986 (D.C.1985) (recognizing "the authority of a trial court judge to control the manner and order of questions put to witnesses"); *see also Plummer v. United States*, 870 A.2d 539, 542–543 (D.C.2005).

4. To convict someone of CPWL, UF, or UA, the government must prove that the defendant did not have a license to carry a pistol or a "valid registration certificate" for the fire-

arm in question. *See* D.C.Code §§ 22–4504(a) (CPWL), 7–2502.01(a)(UF), and 7–2506.01(3)(UA). This element of each offense is usually proven by the introduction of a CNR or similar document. There is no such requirement of proof, however, to establish guilt of PFCV, *see* D.C.Code § 22–4504(b), and thus the erroneous admission of the CNRs in this case does not affect appellant's two PFCV convictions. But see part VI of this opinion, *infra*, concluding that the two PFCV convictions merge into one.

*accord, Scott v. United States,* 115 U.S.App.D.C. 208, 208, 317 F.2d 908, 908 (1963) ("The general and obviously salutary rule is that objection to the admissibility of evidence should be made at the time it is offered and the grounds therefor stated" (citation omitted)). Thus, "[t]o be considered timely, an objection must 'permit the court to take appropriate and effective corrective action.' " *Mercer v. United States,* 724 A.2d 1176, 1182 (D.C.1999) (citation omitted).

 Additionally, an objection must sufficiently articulate the objecting party's argument to preserve the claim on appeal. As we explained in *Perkins v. United States,* 760 A.2d 604 (D.C.2000):

> Objections must be made with reasonable specificity; the judge must be fairly apprised as to the question on which he is being asked to rule. Points not asserted with sufficient precision to indicate distinctly the party's thesis will normally be spurned on appeal. The purpose of requiring a specific objection is to enable the prosecution to respond to any contentions raised and to make it possible for the trial judge to correct the situation without jettisoning the trial.

*Id.* at 609 (citations omitted).

Here, defense counsel initially objected to the admission of the CNRs when they were first offered, but only on the ground that they were more prejudicial than probative. It was not until much later that same day, after the government had called its two final witnesses, read the CNRs into evidence, and rested its case, that counsel raised an additional challenge to the CNRs. But even then, counsel muddled his confrontation claim with the argument on his motion for judgment of acquittal. The government responded to it by asserting that the evidence was sufficient, and the court denied the motion, also treating it as a motion for judgment of acquittal.

The government contends that at this late stage of the trial, after the CNRs had already been admitted, the trial court was no longer able to take "appropriate and effective corrective action" regarding the CNRs. *Ebron v. United States,* 838 A.2d 1140, 1147 (D.C.2003). It therefore concludes that the court was not "fairly apprised as to the question on which [it was] being asked to rule," *Perkins,* 760 A.2d at 609, and that appellant's present claim of error based on *Melendez–Diaz* and *Tabaka* should be assessed under the strict standards of the plain error rule. While the question on this record is a close one, we think that counsel said enough—just barely enough—to alert the trial court to his claim that appellant's right of confrontation was being infringed by the admission of the CNRs. The reference to confrontation did come rather late in the game, but even at that point the court could have granted effective relief by striking the CNRs from evidence and instructing the jury to disregard them.[5] Since we are satisfied that the Sixth Amendment issue was adequately preserved, we are bound by *Tabaka* (and *Melendez–Diaz* ) and hold accordingly that the CNRs were erroneously admitted into evidence. We therefore conclude that appellant's convictions of CPWL, UF, and UA must be reversed.[6]

---

5. On the other hand, if the confrontation claim had been clearly articulated earlier, before the CNRs were actually admitted, in all likelihood there would have been sufficient time for the government to locate an authenticating witness.

6. In its brief the government concedes that "[i]f appellant's Confrontation Clause claim is considered preserved ... the error was not harmless beyond a reasonable doubt under *Chapman* [*v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ]," and that the

## IV

"Serious bodily injury" is a statutory element of aggravated assault, either armed or unarmed, which the government must prove in order to obtain a conviction. *See* D.C.Code 22–404.01 (2001). Appellant contends that the trial court's definition of "serious bodily injury" was plainly erroneous because it was susceptible to misinterpretation by the jury.

The court read to the jury the standard "red book" instruction, which defined a serious bodily injury as "an injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *See, e.g., In re D.E.*, 991 A.2d 1205, 1210 (D.C.2010). Since the time of appellant's trial, the standard instruction has been modified to list "substantial risk of death" as the final enumerated consequence rather than the first, in order to rectify an apparent error in syntax. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.103 (5th ed. rev. 2010).

This syntactical error required reversal of a defendant's AAWA conviction in *Scott v. United States*, 954 A.2d 1037 (D.C.2008). In that case, in response to a juror's note regarding the definition, "the court instructed the jury [over defense objection] that 'substantial risk of' applied to each of the physical conditions listed in the instruction." *Id.* at 1045. We held that this instruction was erroneous.[7] In the case at bar, however, we do not find any reason to reverse because the instruction was never objected to, the jurors never expressed confusion over its phraseology, and the trial court did not otherwise invite a misapplication. *See, e.g., McGill v. United States*, 121 U.S.App.D.C. 179, 185, 348 F.2d 791, 797 (1965) ("The sport of syntax should not be indulged when trial counsel did not make timely objection except in a clear case of prejudice"). There is nothing in the record that would lead us to believe that the jury misunderstood or misinterpreted the instruction, and thus nothing on which to base a finding of plain error.[8]

## V

Appellant also contends, for the first time on appeal, that the trial court erred by giving the jury what has been called an "attitude and conduct" instruction. In *(Marcus) Jones v. United States*, 946 A.2d 970 (D.C.2008), we held that jurors "should not be told impliedly that they fail the 'test' of responsible service if they do not overcome their 'opinions' and reach agreement on a verdict." *Id.* at 974. We agree with appellant that the trial court's instruction improperly delivered this message to the jury, and that it was therefore erroneous.

convictions of CPWL, UF, and UA should therefore be reversed.

7. The government conceded in *Scott* that the instruction was erroneous "but argue[d] that any error was harmless." *Scott*, 954 A.2d at 1045. We concluded otherwise and reversed the AAWA conviction, along with a PFCV conviction for which AAWA was the predicate offense. *Id.* at 1047–1048. However, we affirmed the other five convictions because they were not affected by the instructional error. *See id.* at 1049–1050.

8. We summarily reject appellant's assertion that Mr. Williams' gunshot wounds did not constitute "serious bodily injury." Dr. Sava's testimony firmly established that the twelve gunshot wounds inflicted upon Mr. Williams posed a substantial risk of death and caused him extreme physical pain. Indeed, common sense alone would virtually compel such a conclusion.

Nevertheless, we also hold, as we held in *(Jerome) Jones v. United States*, 999 A.2d 917 (D.C.2010), that because the "attitude and conduct" instruction had not yet been deemed erroneous at the time of appellant's trial, the error was not obvious enough to constitute plain error requiring reversal. *Id.* at 923; *see Thomas v. United States*, 914 A.2d 1, 5 (D.C.2006). Additionally, given the extensive evidence presented by the government, appellant cannot otherwise establish that the instructions were "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial. . . ." *Id.* (quoting *Coates v. United States*, 705 A.2d 1100, 1105 (D.C.1998)). We therefore reject appellant's claim of plain error based on this instruction.[9]

## VI

■ Finally, appellant contends that his two PFCV convictions merge. The government does not contest this claim, and we agree that merger is required.

This court has held that multiple PFCV charges should merge when "they arise out of a defendant's uninterrupted possession of a single weapon during a single act of violence." *Matthews v. United States*, 892 A.2d 1100, 1106 (D.C.2006) (citing *Nixon v. United States*, 730 A.2d 145, 153 (D.C.), *cert. denied*, 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999)). Although appellant fired twelve shots directly at Mr.

Williams in the course of their encounter, the government does not contend that he "had an opportunity to reflect, or to reach a fork in the road," during his commission of the offense. *See Stevenson v. United States*, 760 A.2d 1034, 1037–1038 (D.C. 2000). Therefore, one of appellant's PFCV convictions must be vacated as duplicative. *See, e.g., Marshall v. United States*, 15 A.3d 699, 712 (D.C.2011).

## VII

For the foregoing reasons, appellant's convictions of assault with intent to kill while armed (count one of the indictment) and aggravated assault while armed (count three) are affirmed. His convictions of carrying a pistol without a license, possession of an unregistered firearm, and possession of unregistered ammunition (counts five, six, and seven) are reversed. Appellant's two convictions of possession of a firearm during a crime of violence (PFCV) (counts two and four) are affirmed on the merits, but we hold that they merge. The case is remanded to enable the trial court to vacate one of appellant's two PFCV convictions, leaving the other undisturbed.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

---

**9.** Two other recent cases have considered challenges to "attitude and conduct" instructions and found no basis for reversal. In *Lampkins v. United States*, 973 A.2d 171 (D.C. 2009), we found "no error, much less plain error," because the instruction at issue "did not include the objectionable language found in the [ *(Marcus)* ] *Jones* instruction. . . ." *Id.* at 173. Later, in *McClary v. United States*, 3 A.3d 346 (D.C.2010), we noted that the challenged instruction did contain some of the language that we deemed objectionable in *(Marcus) Jones.* We nevertheless found no

reversible error because "this jury instruction as a whole differs from the *Jones* instruction significantly and does not, on the whole, encourage the jurors to ignore their individual opinions. . . . Importantly, the present instruction adds language that we think changes the meaning of the instruction from that in *Jones.*" *Id.* at 354–355.

Because the instructions in *Lampkins* and *McClary* both contained language different from that before us in the instant case, we find both cases to be inapposite here.